# CHARLESTON.

## STATE v. MCTIER AUSTIN.

### Submitted May 2, 1923.  Decided May 20, 1923.

1. GRAND JURY—*Duty of Sheriff to Summons Grand Jury.*

    Under section 3, chapter 157, Barnes' Code, 1923, it is the duty of the sheriff to summon grand jurors for service upon. the grand jury in accord with the writ therefor issued by the clerk of court. (p. 707).

2. SAME—*Notice by Sheriff to Prospective Grand Juror by Post Card, or Otherwise than by Service of the Regular Writ, not a Legal Summons.*

    Notice given by the sheriff to a prospective grand juror,. by post card or otherwise than by service of the regular writ is not a legal summons. (p. 707).

3. SAME—*Selection of Grand Jury Held Legal.*

    Where the sheriff fails to summon the grand jurors as required by law, but notifies them by mail that their names have been drawn from the grand jury list and that they should appear at the required time, and but twelve so notified appear for service; and the court, pursuant to section 4, chapter 157,. Barnes' Code, 1923, appoints two bona fide citizens, of opposite politics, having the qualifications of jury commissioners, who, after taking the oath required of jury commissioners, select four other qualified persons to complete the grand jury and these with the twelve so appearing are regularly sworn. and empaneled as a grand jury, such grand jury is not illegally constituted because the names of the four so selected were not on the list of grand jurors, prepared in accordance with section 2 of that chapter. (p. 707).

4. SAME—*Qualifications of Grand Jurors Enumerated.*

    The following are the only qualifications required of a. grand juror, under chapter 157, Code:—(1) that he be a man of good moral character; (2) that he has never been convicted of a felony or of any scandalous offense; (3) that he is and has been a bona fide citizen of the state and county for at least one year immediately preceding the preparation of the grand jury list, or if his name be not on the grand jury list, then a bona fide citizen of the state and county for at least one year immediately preceding his service; and (4) that he be not an office holder under the laws of the United. States or of this state. (p. 708).

5. SAME—*Placing Name on Grand Jury List Does not Qualify, Nor is it Necessary in Order to Qualify as Grand Juror.*

Placing his name on the grand jury list does not qualify him; nor is that a necessary qualification. (p. 711).

6. INDICTMENT AND INFORMATION—*Indictment May not be Quashed or Abated for Incompetency or Disqualification of One or More Grand Jurors.*

Under section 12, chapter 157, Code, no indictment may be quashed or abated on account of the incompetency or disqualification of any one or more of the grand jurors who found the same. (p. 711).

7. CRIMINAL LAW—*Court Should be Extremely Cautious, not to Intimate Opinion on Any Fact in Issue.*

In the trial of a criminal case the jurors, not the court, are the triers of the facts, and the court should be extremely cautious not to intimate in any manner, by word, tone, or demeanor, his opinion upon any fact in issue. (p. 711).

8. SAME—*Remarks of Court in Colloquy With Defendant's Counsel, Referring to Testimony Unfavorable to Accused, Reversible Error.*

Where upon the trial of a criminal case, during the address to the jury by defendant's counsel, the court engages in a colloquy with defendant's counsel relative to the testimony of the prosecuting witness, and unduly calls the jury's attention to testimony of the witness unfavorable to the accused, it will be presumed that the jury was influenced to the prejudice of the prisoner and a verdict of guilty will be set aside, and a new trial awarded. (p. 711).

9. SAME—FORGERY—*Evidence of Ratification of the Drawing of a Check Admissible.*

Where accused is charged with forging and uttering a bank check and the undisputed evidence is that the check was not drawn by the accused but by a third party, no subsequent ratification of the drawing of the check will defeat the right of the state to prosecute for the offense of uttering it, knowing it to be a forged instrument; but evidence of such ratification is admissible as tending to show that such third party who signed the purported drawer's name thereto had authority from him whose name was signed as drawer to issue the check in the alleged drawer's name. (p. 715).

Error to Circuit Court, Mercer County.

McTier Austin was convicted of forgery, and he brings error.

*Reversed and remanded.*

*John Kee* and *Russell S. Ritz,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

MEREDITH, JUDGE:

Defendant seeks to reverse the judgment of the circuit court of Mercer County, by which he was sentenced to confinement in the penitentiary for five years on the charge of forgery.

The indictment charges, and the evidence introduced for the state tends to show, that during the month of May, 1919, defendant presented for payment at the First National Bank of Bluefield a check for $92.00, purporting to be signed by Wright Smith as maker, payable to the order of Joe Johnson, and bearing the notation "for liberty bond." According to the testimony of the bank teller, defendant represented himself to be the payee named in the check and received payment thereon. Wright Smith denies the signature as maker, and certain employees of the bank familiar with his signature state that it is not in his handwriting.

The defense is that the defendant cashed the check at the request of one Mamie Fitzgerald, who represented that she had authority to sign checks for Smith and in his name, and that it along with several other checks similarly signed was made payable to a fictitious payee "Joe Johnson" to allay the suspicions of defendant's wife, who might otherwise suspect defendant of relations with Mamie Fitzgerald, who, it appears, conducted a resort of questionable character, and who disappeared simultaneously with defendant's arrest. Whether she did or did not have the authority claimed we need not decide,—there is some evidence that she did,—the errors assigned involve other questions, which we will discuss in order.

First.   Defendant, prior to the introduction of any evidence on the issues raised by the indictment, filed three special pleas, and offered proof in support thereof.  Two of the pleas, the first and third, are now insisted upon.  The second seems to be abandoned.

Tersely stated, the first special plea avers, and the evidence of the circuit clerk shows, that although the Jury Commissioners selected 16 persons for grand jury service on the occasion of defendant's indictment, and the venire facias of the circuit clerk properly called for that number, but twelve of those whose names were included on the venire actually appeared, and the remaining four were summoned from by-standers about the court. This procedure, defendant argues, is not allowable under the statute, ch. 157, secs. 2-4, Barnes' Code, 1923, as amended by ch. 22, Acts 1919.

The third special plea goes to the manner in which the twelve grand-jurors who did serve, were summoned to appear, namely, that though sec. 3, ch. 157 Code, states that the sheriff, under order of the circuit clerk, shall summon the grand-jurors into court, no such summonses were served in this case, but that "a notice was mailed to each of said persons notifying them of their selection for grand jury service."  The testimony of the sheriff substantially sustains the facts averred in this plea, and defendant maintains, not only that the notification was irregular, but was void and devitalized the whole grand jury panel as a legally constituted body.  The court refused to sustain either of the pleas, and its action is assigned as error.

The issues raised by the two pleas are argued part separately, and in part to-gether.  They are so interwoven that we also may be compelled to discuss them in somewhat the same fashion.

First, as to the selection of the four bystanders: defendant says, that although it was formerly the proper practice for the sheriff to complete the grand jury panel from bystanders, sec. 4, ch. 22, Acts, 1919, now sec. 4, ch. 157, Code 1923, repealed sec. 4, ch. 157, Code, 1918, providing for such selection, and rendered this procedure no longer legal.  Attorneys for the state deny the repealing effect of this statute.  This

issue necessitates an examination of the language of the Acts.

Prior to 1919, as heretofore stated, the law on this question appeared in sections 2, 3 and 4 of chapter 157, Code. Section 2 provided for the preparation of the grand jury list of 100 to 150 freeholders by the county court at each levy term, expressly disqualifying constables, keepers of hotels and taverns, surveyors of roads, owners of grist mills, and persons convicted of scandaluos offenses and of grossly immoral character. It also provided for the preparation of the separate ballots, each to bear the name of one person selected for service, and the box in which the ballots should be deposited. Section 3 provided for the issuance of the venire facias by the circuit clerk at least 30 days before the term of court, and for the drawing of the jurors by the jury commissioners who were usually the county clerk and circuit clerk, and the summoning by the sheriff. The first clause of the section is significant. It reads:

> "All grand jurors shall be selected by drawing ballots from the said box in the manner prescribed in this chapter, and the ballots so drawn, shall be returned to serve as grand jurors."

Section 4 fixed the only exception to the regular method of selection as follows:

> "Any fifteen or more of the grand jurors attending shall be a competent grand jury. If a sufficient number do not attend, the court shall direct the sheriff to forthwith summon as many others as may be necessary, whether their names are in such list or not, but who shall in other respects be qualified to act as grand jurors."

Clearly, under this section, a selection of four bystanders by the sheriff would be proper. The only question remaining, therefore, is whether this procedure has, as defendant argues, been repealed by sections 2 to 4, chapter 22, Acts 1919.

In general, the sections of the new statute correspond in subject matter to the sections of the old. Our purpose

is to point out in what respects they depart from the old on the issues presented. Section 2 makes a distinct change as to qualifications. No longer need a grand-juror be a a free holder, nor are any persons disqualified because of their following any particular occupation; the only qualification being that they shall be men of good moral character, and who have never been convicted of a felony or of any scandalous offense; and shall be *bona fide* citizens of the state and county for at least one year immediately preceding the preparation of the list, and shall not be office holders under the laws of the United States or of this state. Special emphasis is laid by defendant upon the introductory language of section 3 as amended. In lieu of the former terms that "All grand jurors shall be selected," etc., it now reads:

> "The clerk of the circuit court or other court requiring a grand jury shall, at least thirty days before the term of court, summon the jury commissioners to attend at his office at a day specified, which shall not be less than twenty days before such term, and select- men for the grand jury, but the court, or judge thereof, may require said jury commissioners to appear forthwith, or at any specified time, and select grand-jurors for either a regular or special term of court."

Other changes in the section would appear not to affect the present controversy.

Section 4 was materially altered. As amended it reads:

> "Any fifteen or more of the grand jurors attending shall be a competent grand jury. If a sufficient number of qualified jurors do not attend, the court shall appoint two *bona fide* citizens of the county, of opposite politics, having all the qualifications of jury commissioners, who, after taking the oath required of jury commissioners, shall select the number of qualified persons necessary to complete the grand jury, for which services the persons so appointed shall be allowed the sum of two dollars each to be certified by the court to the county court for payment."

93 W. Va.

The question is, do these amendments of sections 3 and 4 bar the selection of bystanders to complete a grand jury panel?

The argument of defendant is that the object of the Act of 1919 was to provide a remedy for the practice commonly known as " packing the grand jury", by requiring that the jurors be selected in every instance from the names on the jury list. This purpose is evidenced, it is claimed, by the provision for the appointment of two special jury commissioners who shall make the selection in lieu of the sheriff, as in the prior statute, and by the substitution for the expression " to forthwith summon as many others as may be necessary, whether their names are in such list or not", the words "shall select the number of qualified persons necessary to complete the grand jury." Obviously, though the appointment of commissioners might serve to bring about a more desirable selection, that amendment alone would not affect the change contended for. But, says defendant, those selected must be *qualified persons* and the omission of the expression "whether in such list or not" means that to be qualified one must be on the list. To this we can not agree. In this conclusion we are much persuaded by two circumstances. First, section 3 of the act prior to amendment was prefaced by the expression, heretofore quoted that *all grand jurors* shall be selected by drawing ballots from the box, etc. At present, however, it includes no such broad rule, merely stating that the commissioners shall select men for the grand jury, and it would seem that in this particular the statute as amended tends to extend the power to select jurors not on the jury list, rather than to restrict it. Furthermore, the special jury commissioners provided in section 4 are empowered, not to select qualified persons from the jury list, but to select qualified persons, as we take it, persons who, in the words of the section, are "of good moral character, and who have never been convicted of a felony or of any scandalous offense; and shall be *bona fide* citizens of the state and county for at least one year immediately preceding the preparation of the list, and shall not be office holders under the laws of the United States

or of this state.'' Those are the qualifications now prescribed for grand jurors; and though the list should be prepared with those requisites in mind, inclusion on the list can not be said to be an element of qualification or evidence thereof, and the commissioners provided in section 4 are not confined to such list in making their selection. We can not hold that the common law power of a court of criminal jurisdiction to summon grand jurors is to be restricted by inference alone, and are of opinion that defendant's point on this question is not well taken.

Little need be said as to defendant's objection to the method of summoning used in this case. True it is that the statute specifies that the jurors shall be summoned by the sheriff. This was equally true prior to 1919, and a mere postal card notification could not be said to meet the statutory terms. However, the method of summoning the jurors is not a matter of finely drawn distinctions. Such a summons has but one purpose, the bringing of the jurors into court, and if, as stated in *State* v. *Hoke,* 76 W. Va. 36, 84 S. E. 1054, ''the jurors are drawn in the manner provided, from the list furnished by the county court, and actually attend at court, and are duly sworn and serve as such, it matters not that they were not actually summoned.'' Twelve of the jurors notified served, and the places of those failing to appear were filled by the special jury commissioners, and we see no reason to sustain the contention that such a grand jury is not legally constituted. If the Legislature desired to make it necessary that a grand juror's name should be upon the list before he could be legally qualified to serve as such, it could and should have said so in plain and unmistakable terms. Section 12, chapter 158, Code, 1923, provides that no indictment shall be quashed or abated on account of the incompetency or disqualification of any one or more of the grand jurors who found the same. We think this is a sufficient answer to defendant's contention.

*Second.* The other principal contention of defendant's counsel arises upon their objection to certain remarks of the trial judge, occurring during counsel's closing argument to the jury. At two points in his direct examination, once in

answer to the question of his counsel and again in answer to a question of the court, Wright Smith, the chief prosecuting witness, testified that he had never authorized any one to sign his name to the check in question. At another point, in cross-examination, he testified that if Mamie Fitzgerald signed it, it was all right, a good check, and that he was willing that it should be paid. Upon this latter statement, and other evidence, counsel for defendant based their theory that the check was signed by Mamie Fitgerald, under proper authority, and that the signature was not forged by defendant. In argument, counsel read the parts of the cross-examination alluded to above, and upon reading the question and answer in which the defendant would have it appear that Mamie Fitzgerald's authority was admitted, the court interrupted the argument as follows:

> "THE COURT: Didn't he also state in answer to the question propounded by the Court that he didn't authorize Mamie Smith or Mamie Fitzgerald or any body else to sign this check or any other check for him?
>
> COUNSEL. Counsel objects to this question being propounded under the circumstances and moves that the Court direct the jury not to consider it.
>
> THE COURT: Then you refuse to answer that question?
>
> COUNSEL: Counsel makes a like motion to this question.
>
> THE COURT: Let the record show that the counsel refused to answer the question.
>
> COUNSEL: A like exception to the last statement.
>
> THE COURT: Show that he never did answer it.
>
> COUNSEL: Make a like exception to that statement.
>
> THE COURT: A like showing by the Court that he refuses to answer.
>
> COUNSEL: Gentlemen of the Jury: This case has reached the point where it is the privilege of

counsel to present the case to the jury. Now, I have no objection to the Court occupying and participating in those prerogatives that are especially set aside under the law for the Court to participate in, but I don't think that it is necessary for me to go on the witness stand and answer questions, and I don't mind that going in the record. My answer to the Court's question is this: That the witness, Wright Smith, testified on behalf of the State when put on the witness-stand that he didn't sign the check and that he didn't authorize anyone else to sign it. Now, isn't that a fair statement?

THE COURT: Isn't that all the Court asks you now?

COUNSEL. I leave it to the jury as to what you asked. Is it necessary now for me to answer that?

THE COURT: Just show then, that he refuses to answer the question of the Court again.

COUNSEL: . Show a similar objection. I leave it to the jury whether or not I fairly presented the evidence of this man, Wright Smith. For fear that someone would say that I was misquoting the witness, I had the reporter write up what Wright Smith said about approving the signing of this check, if it was done by Mamie Fitzgerald. Now, simply because I don't say all that the witness says, I am charged with not properly presenting the evidence.

THE COURT: Who charged you with anything?

COUNSEL: I am not saying—

THE COURT: What do you mean by your remark then?

COUNSEL: If I made an improper remark, I withdraw it. I say that the Court asked me if Wright Smith didn't say that this check was given without his authority; that was to my mind an imputation that I had left out that part of his evidence. If I am wrong in coming to that conclusion I am sorry that is the conclusion I reached, and if I am wrong in that I will be glad for the Court to straighten me out.

THE COURT: Your statement is perfectly satisfactory to the Court.

COUNSEL: Now, Gentlemen of the Jury, the facts haven't changed at all, notwithstanding what may have been said  *  *  *  ."

Counsel for defendant insists, and we think justly so, that these remarks of the trial court, although to some extent induced by counsel in heat of argument, diminished very materially defendant's chances of a jury's decision on the facts, free and clear from the influence of the presiding judge. It has long been recognized that even a slight remark, apparently innocent in its language, may when uttered by the court, have a decided weight in shaping the opinion of the jury. Vested as he is with superior authority, disinterested, and possessing experience not available to the ordinary layman, jurors, as a rule, are anxious to catch his view, upon which to found their conclusions. As the jurors should be the triers of the facts, such judicial influence should be studiously guarded against. Therefore, as stated in *State* v. *Kerns*, 47 W. Va. 266, 34 S. E. 734, the judge "should exercise great care not to intimate in any manner his opinion upon any facts in issue. He can not do so directly or indirectly, neither explicitly nor by innuendo. *State* v. *Dick*, 60 N. C. 440; *State* v. *Ah Tong*, 7 Nev. 152. Words in themselves may be harmless, while accent and manner may make them deadly." Nor do we think the words used here harmless. It appeared to counsel, and so appears to us, that the court in this case may have been understood as attaching a higher importance to Wright Smith's direct examination than to his answers to questions on cross-examination. This, of course, involves the balancing of testimony which is peculiarly within the province of the jury, after argument by counsel. There is no doubt in our minds that the court here overstepped the proper bounds and erred to defendant's prejudice.

Other errors assigned involve the instructions. Defendant objects to State's instructions number 3 and 7, given over objection. Instruction number 3 is to the effect that the uttering or passing of the forged check by the defendant is indicative of his guilt, and should be considered by the jury.

This instruction is clearly correct. Our statute, sec. 5, ch. 146, Code, 1923, prescribes the penalty for forging and uttering checks and other writings, and the decisions of this court and other states clearly define the elements of the offense. Of these elements perhaps the most vital is the intent of the accused. It must "be done *with intent to defraud,* and if this *intent to defraud,* from any cause be absent from the mind of the accused at the time of making, altering or falsifying the writing, the crime of forgery has not been committed," *State* v. *Poindexter,* 23 W. Va. 805. It need scarcely be stated that the passing or uttering of the check alleged to be forged is a strong circumstance to be considered as tending to show intention to defraud, and evidence thereof is clearly admissible for that purpose. *Cohen* v. *People,* 7 Colo. 274; *Fox* v. *People,* 95 Ill. 71; *State* v. *Outs,* 30 La. Ann. 1155; 13 Am. & Eng. Ency. Law (2nd. ed.) page 1110.

Instruction No. 7 is equally proper. By it the jury were told that if they believed the check was forged and that the defendant represented himself to be Joe Johnson, such fact should be considered in determining defendant's guilt or innocense. Not only is the use of a fictitious name without explanation at the time in itself a somewhat suspicious circumstance in almost any transaction, but it occurs to us also that such is the very general practice of those who appropriate the names of others in signing checks and similar documents. It was certainly proper for the jury to weigh this circumstance along with other evidence presented.

Defendant requested two instructions, based on the theory that if the jury believed that Wright Smith adopted the signature of Mamie Fitzgerald, even though unauthorized in the beginning, Smith's rights were not prejudiced and there was therefore no forgery. Such instructions require little comment. It is too clear for argument that it is not the ultimate prejudice of another's rights which determines the crime, it is sufficient that the false instrument be made with intent to defraud. 26 C. J. page 907, citing cases. No subsequent ratification by the party sought to be injured could in any way mitigate the guilt of the accused. "So far as the right of the state to pursue and punish the forger as a criminal is

concerned, it is certain that a subsequent ratification by the individual sought to be charged, will be unavailing to defeat it. Any undertaking to suppress the crime would, as has been seen, be contrary to public policy and void." 1 Mechem, Agency, (2nd. ed.) §360. The evidence of Smith's subsequent ratification, therefore, while material as tending to show the existence of prior authority, is not material in the sense that the subsequent ratification alone could excuse the defendant; and the instructions, Nos. 6 and 9, were properly refused.

Instruction No. 11 requested and refused differs slightly from Nos. 6 and 9. In it the jury were instructed that though the check was to Wright Smith's prejudice, nevertheless, " if it was by him approved and adopted as genuine by reason of its having been made by Mamie Fitzgerald, then it was not a forged paper and your verdict must be for the defendant Not Guilty." Perhaps the most obvious objection to this instruction is the fact that it omits the element of uttering. If found guilty of either forging or uttering, defendant was bound to suffer the penalty the statute provides. We have already shown that a subsequent ratification can not relieve from prosecution one, who with intent to defraud signs the name of another to a check, so Smith's subsequent adoption of her signature, without prior authority, could not have palliated the offense of Mamie Fitzgerald in signing it; and by like reasoning could not have affected the criminality of its utterance by defendant. In this respect instruction No. 11 is as erroneous as the other two, and was properly refused.

Because of the court's improper and prejudicial remarks during the course of the argument, we reverse and remand the case.

*Reversed and remanded.*