# CHARLESTON.

STATE v. CLAY WILLEY, *alias* "DOGGIE WILLEY".

Submitted September 23, 1924.   Decided September 30, 1924.

1. CRIMINAL LAW—*Not Necessary to Prove Moonshine Liquor Intoxicating.*

   In a prosecution for sale of moonshine liquor under Section 3, Chapter 32-A of the Code, it is not necessary to prove that the liquor would produce intoxication. (p. 257).

2.  SAME—WITNESSES—*Evidence That Prosecuting Witness Was Promised Immunity, or Testified to Save Himself, Held Admissible to Show Interest; Remarks of Trial Judge, That Such Evidence Was Immaterial, Held Prejudicial Error.*

In the trial of an indictment for unlawfully selling moonshine liquor evidence that the prosecuting witness to whom the liquor was sold was promised immunity from prosecution if he would make full and truthful disclosure as provided in Section 37, Chapter 32-A of the Code, or that he elected to make such disclosure in order to save himself from prosecution and confiscation of his automobile in which the liquor was found, is admissible to show the interest of the prosecuting witness, thus affecting the weight to be given his testimony. Remarks of the trial judge in the presence of the jury that such proffered evidence is immaterial to the issue, constitutes prejudicial error.   (p. 258).

3.  WITNESSES—*Prosecuting Witness, Denying That He Testified, to Protect Himself, May Be Contradicted by Proof of Contrary Statement.*

In such case if the prosecuting witness denies that he elected to disclose the source of his purchase, or that he made the indictment or instituted the prosecution in order to protect himself from prosecution, or to save his automobile from confiscation, he may be contradicted by witnesses to whom he stated that he made the indictment as the only method by which he could save his car, and that he would pay defendant's fine.   (p. 258).

4.  CRIMINAL LAW—*Instructions Must be Submitted to Counsel Before Given; Giving of an Instruction Materially Modified, Without Opportunity to Object After Modification, Prejudicial Error.*

Instructions given by the court on its own motion must be submitted to counsel for objection before given. The giving of an instruction materially modified by the court without the knowledge or consent of counsel, after it had been marked "given" and without opportunity to object after modification, violates the intent of the Statute, Sec. 22, Chapter 131, Barnes' Code, and constitutes prejudicial error.   (p. 258).

Error to Circuit Court, Marion County.

Clay Willey, alias Doggie Willey, was convicted of the unlawful sale of intoxicating liquors, and he brings error.

*Reversed; verdict set aside; new trial awarded.*

97 W. Va.

*Ernest R. Bell,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

Defendant prosecutes this writ of error from a judgment of the Criminal Court of Marion County pronounced June 30, 1923, and from a judgment of the Circuit Court of that County refusing writ of error entered February 20, 1924. On an indictment for unlawfully selling liquors, a jury found him guilty, and the court sentenced him to confinement in jail for sixty days and to pay a fine of $300.00.

Error is predicated on the giving and refusing of instructions, the order in which they were given; refusal of the court to instruct the jury to disregard remarks made by the court in the progress of the trial tending to prejudice defendant; refusal to admit proper and material evidence; and refusal to set aside the verdict as contrary to the evidence.

Bernard Murphy, the prosecuting witness, testified that he had purchased from defendant a bottle of what he termed moonshine liquor for which he paid $4.00 at Frank Murphy's pool room in the City of Fairmont, on May 12, 1923. He was accompanied by Hatmaker, having arrived in the City of Fairmont that day in his automobile in company with Hatmaker and two young women. Upon arriving at the pool room he met defendant and asked him if he had any liquor, and was answered in the affirmative. After he had finished a game of pool then in progress he sent Hatmaker to defendant to tell him to come to the rear of the pool room where there was an urinal, partially enclosed by a partition, and where the purchase and delivery was made. He and Hatmaker then retired from the pool room and drank some of the liquor. Afterwards he drove out of the City in his car accompanied by Olive Jackson, and while parked on the Hillcrest road he was arrested by officers about 8:30 P. M., for what reason it does not clearly appear, and taken to the office of the prosecuting attorney. The bottle of liquor was found in a pocket in the car and brought into the prosecuting attorney's office. After talking with the prosecuting attorney no charge

was preferred against him, but a warrant was issued for the arrest of defendant, and at the following grand jury term of court the indictment against defendant was found on his evidence.    He was asked on cross-examination if he was promised immunity that night in the prosecuting attorney's office, for the purpose, as stated, upon inquiry from the court, of showing whether his evidence was voluntary.    The court then remarked: "If he changed his evidence because of any promise of immunity and tells anything but the truth about it, he would be held for perjury before he left the witness box."    Counsel excepted to the remark, and asked the court to instruct the jury to disregard it, which the court declined to do.    This is one of the errors alleged.    The witness then said he had not been promised immunity.    Asked if he was not testifying in order that he might save his automobile from confiscation under the prohibition laws, and where his automobile then was, or if it had been confiscated, the court, upon objection, would not let the witness answer, and the record was vouched to the effect that if the witness was permitted to answer he would say that he then had possession of the car and it had not been taken by any officer.    The court then remarked that the evidence was not material, but he would permit the witness to answer.    The witness then said that his car had not been confiscated.    Objection was made to the remark of the court that the evidence was immaterial and counsel moved an instruction to disregard the Judge's remark, which motion was refused.    This is assigned as error. The witness was then asked if on the day he made the indictment, or in the week the indictment was returned, if he did not go to the restaurant in the building where Murphy's pool room was operated and inquire for defendant, and then and there asked Nim Satterfield, in the presence of Walter Chase, to tell "Doggie" (meaning defendant) that, "I am sorry I had to do it, but it was the only way I had of saving my car and tell him that I will pay his fine."    The court then inquired of counsel if he was laying a foundation for contradiction, and being informed that it was for that purpose if the witness denied the conversation, the court said the evidence was immaterial whether witness did have such conversation, but he would permit the witness to answer.    The remarks of

the court as to the materiality of the evidence was excepted
to. The witness then denied the conversation, and said he
did not know Nim Satterfield. Later in the trial upon repe-
tition of the question to Murphy as to the time of the con-
versation and giving the exact language used by him in that
conversation, the court refused to permit the witness to
answer, holding that it was immaterial whether he made the
purported inquiry or had the conversation; and being on an
immaterial matter foundation for contradiction could not be
laid. Exceptions were taken to the ruling and remarks of the
court. When Satterfield and Chase were examined they were
asked if they had the conversation at the time and place above
set out with Murphy, the prosecution witness, and the court
refused to permit them to answer, and the record was vouched
to the effect that Murphy had the conversation detailed above
with Satterfield in the presence of Chase.

Hatmaker partly corroborated Murphy's testimony about
the purchase of the liquor. He says he sent ''Doggie'' Willey
to the rear of the pool room at the request of Murphy. He
was not present at the purchase. After Murphy came out
of the room he joined him, and they took a drink of liquor
out of a bottle in Murphy's possession. He says it was ''moon-
shine liquor.''

Defendant denied having made the sale to Murphy. He
admits that he was in the pool room and that some one told
him a man wanted to see him in the rear; he went back and
found Murphy near the urinal. He says, however, that
Murphy, whom he casually knew, asked him to take a drink
of moonshine liquor with him which he declined to do; that
he saw no liquor of any kind there, and that was all that
occurred. The evidence of other witnesses tend to corrobor-
ate him. That night about 1:30 o'clock he was arrested on
the charge, taken to the sheriff's office where Murphy and
several other persons were congregated, and lodged in jail.

This direct conflict in the evidence has been determined by
the jury in favor of the State. The State's evidence is suffi-
cient to sustain the verdict; and it was not error to refuse the
motion to set aside the verdict because it was contrary to the
evidence. But counsel says the evidence does not sustain the
verdict because the State failed to show that the liquor was

intoxicating. Hatmaker said the liquor was "moonshine" liquor. Under Sec. 1, Chap. 32-A of the Code, all malt, vinous or spirituous liquors, wine, porter, ale, beer, or any other intoxicating drink are embraced in the word "liquors" as used in the Act. Under Sec. 3 of that Chapter, the Section under which the indictment was found, any person who makes a sale of any "liquors" is guilty of a misdemeanor; hence, if a sale of any malt, vinous or spirituous liquors, wine, porter, ale, beer, be proven, it is not necessary to prove that they are intoxicating. Moonshine liquor is made by distillation by means of a still, and is spirituous in its nature. It falls within the class of liquors embraced within Section 1 of the Prohibition Act. *State* v. *Dennison*, 85 W. Va. 262; *State* v. *Hussion*, 91 W. Va. 146. State's instruction No. 2 to the effect that in a trial for the unlawful sale of intoxicating liquors, if the evidence establishes the sale of "whiskey" a prima facie case is made, and it is not necessary to show that the whiskey was intoxicating; and instruction No. 3, which tells the jury that the word liquors as used in the prohibition laws includes all malt, vinous and spirituous liquors, wine, porter, ale, beer and the like, and the term "spirituous liquors" includes all forms of whiskey; and proof of sale of any of the enumerated liquors including whiskey is sufficient without showing the intoxicating character of the liquid, are, in the main, correct, though inaptly drawn. They are criticized because the word "whiskey" is used and the evidence shows the sale of moonshine liquor. There is little practical difference in the meaning of "moonshine whiskey" and "moonshine liquor", and it is not likely the jury was misled. The object of instruction No. 3 was to tell the jury that moonshine liquor or whiskey fell within the enumeration of liquors prohibited from sale by Section 1 of Chap. 32-A of the Code, and therefore, being prohibited, proof of alcoholic contents or intoxicating nature was not required.

Did the court err in holding that it was immaterial to the issue to inquire into the motive of witness Murphy in making the indictment and testifying against defendant? Was this evidence pertinent? Murphy says he bought the liquor from Willey; the latter flatly denies that assertion. The jury in such instances must necessarily weigh and determine the credi-

bility of the witnesses, taking into consideration every circumstance which may affect their veracity and credibility. The interest of a witness in the litigation may always be considered in determining the weight and credibility of his testimony. Evidence showing the motive of a witness, his bias or prejudice which may color his testimony, his relationship to the parties, and all such matters which enter into the scales in weighing his testimony is admissible. 28 R. C. L., page 658, Sec. 243. Murphy denied that any immunity had been promised to him. He said he was giving his testimony of his own free will and accord. The court would not permit him to say whether his testimony was inspired by a desire to save his car from confiscation. He was permitted to testify that his car was then in his possession and had not been taken from him by any State or County officer, although the court told the jury the fact was not material. The Statute, Section 37, Chap. 32-A of the Code, was designed to facilitate prosecution of the distributor of illicit liquors, and gives immunity to the possessor of moonshine liquor who fully, freely and truthfully discloses to the officers the person from whom, when and where, he got it, together with all the information he has concerning its manufacture and distribution. He must fully, freely and truthfully testify, and unless he does so, he has not met the requirement of the statute and is not safe from prosecution. *State* v. *Wills*, 91 W. Va. 659. Whether he has done so, would be a jury question. That he has the right to elect to disclose or not to disclose, would be no good reason for withholding from the jury the fact that he had elected to disclose in a prosecution brought about by his election. The fact that he elected to disclose, and thus save himself from prosecution and his car from confiscation, or that he was promised immunity if he would disclose is pertinent in weighing his evidence. We are of the opinion that the proffered evidence was material to the issue. It follows that the remarks of the trial court in the presence of the jury that such inquiry was immaterial, were prejudicial. It follows also that the alleged declaration of Murphy a short time after he made the indictment, to the effect that he did so as the only way of saving his car from confiscation and that he would pay defendant's fine, was material. Although he was

permitted to deny having made such statement, contradiction by witnesses to whom he made it was denied. This was likewise error.

The State's instruction No. 4 told the jury that a person charged with having in his possession moonshine liquor may escape prosecution by disclosure of the person from whom he purchased it; and by truthfully testifying and giving information, &c. We can not perceive the relevancy of this instruction or what light it would throw on the issue of guilt or innocence of the accused. It would be pertinent in the trial of the possessor of the liquor for that offense, where, if the jury believed he had fully, freely and truthfully disclosed under the statute, he would be entitled to an acquittal. Moreover, there is no evidence, except inferential from the circumstances, that Murphy elected to disclose. The court would not permit that inquiry because immaterial. The giving of this instruction presumed that Murphy had so elected, although the instruction is in the abstract, and makes no reference to him or the evidence. "An instruction, however pertinent and applicable it may be, is abstract unless it be made to apply, in express terms, either to the attitude of the parties or to the very facts in issue." *Parker* v. *The National Mutual Building & Loan Ass'n,* 55 W. Va. 134.

State's instruction No. 5 is not objectionable. It does not tell them they have the arbitrary right to disregard the evidence of any witness who in their opinion has testified falsely, by adding the qualification that they can give to the testimony of such witness such weight as they think it may deserve. *State* v. *Lutz,* 85 W. Va. 330; *State* v. *Parsons,* 90 W. Va. 308.

Defendant's instruction No. 3 was refused. It would have told the jury that if they were not convinced of defendant's guilt beyond a reasonable doubt, that if they were not convinced of his guilt to a moral certainty, they should acquit him. The many attempts to define a "reasonable doubt" have not been of much benefit and have added very little clarity to the phrase. A moral certainty of guilt is as difficult to define as a reasonable doubt of guilt.

Defendant's instruction No. 4, refused, read: "The jury are further instructed, that the indictment in this case is of itself a mere accusation or charge against the defendant, and is

not of itself, any evidence of the defendant's guilt; and no juror should permit himself to be influenced against the defendant, because or on account of the indictment in this case." The court first marked the instruction "given" but when read to the jury he stopped at the semicolon and did not read that part telling the jury that no juror should permit himself to be influenced against defendant because or on account of the indictment. Possibly the latter part of the instruction would not add much to the part read which told the jury that the indictment was a mere accusation and was no evidence of guilt; but usually counsel has the right to have his instructions couched in his own language if pertinent, unambiguous, and they correctly propound the law. We can see no objection to the instruction as offered. However, the court gave the instruction as 4-A without having previously advised counsel of the change, and when it was read, defendant's counsel directed the court's attention to the omission of the latter part of the instruction which had been marked as "given"; whereupon the court stated that he had modified the instruction, and gave it as modified. Counsel then objected and excepted. The spirit and design of the statute governing the giving of instructions was violated. Defendant having had no opportunity to inspect the instruction as modified was put to the disadvantage of making objection and exception in the jury's presence. The statute is a mandatory rule of practice and must be strictly followed. *State* v. *Noble*, 96 W. Va. 432, 123 S. E. 237; *Henderson* v. *Kessel*, 93 W. Va. 60, 116 S. E. 68.

It is insisted that remarks made by the Judge during the progress of the trial, and hereinbefore set out, were prejudicial to the prisoner as indicating the weight and credibility which he would accord to the evidence of witnesses. It is impossble to record the manner, tone and demeanor of the trial court on a lifeless record; and we can only repeat what has heretofore been said that the trial judges should be meticulously careful that no word, tone, or manner should be used by them which would convey to the jury their impressions or belief in the guilt or innocence of the accused. The influence of the court over its juries is so apparent and so well recognized, that, to preserve the jury system in its ancient vigor

and splendor as the sole arbiter of fact, the judiciary should studiously and jealously refrain from impressing, in any manner, on the jury its view of fact, or the weight or credibility it would give to testimony. *State* v. *Austin,* 93 W. Va. 704; *State* v. *Staley,* 45 W. Va. 792.

For the errors pointed out the judgment will be reversed, the verdict set aside and a new trial awarded.

*Reversed; verdict set aside; new trial awarded.*