HILMA ELLISON

*v.*

WOOD & BUSH COMPANY, *a Corporation*

(No. 12808)

Submitted September 16, 1969. Decided November 4, 1969.

508

*Jenkins, Schaub & Fenstermaker, C. Robert Schaub,* for appellant.

*Greene, Ketchum, Baker & Pauley, Lawrence L. Pauley,* for appellee.

CALHOUN, JUDGE:

This case, on appeal from the Circuit Court of Cabell County, involves a civil action instituted in that court by Hilma Ellison, as plaintiff, against Wood & Bush Company, a corporation, as the defendant, to recover damages in the sum of $15,000 alleged to have been caused by the defendant to the plaintiff's dwellings, garage, cellar and patio situated in Cabell County, by concussions and vibrations resulting from the defendant's use of explosives for blasting while engaged in the performance of a written contract with the State Road Commission of West Virginia for construction of a portion of a certain highway known as Interstate Route 64. From the action of the trial court in entering final judgment on a jury verdict for the plaintiff in the sum of $7,000, the defendant has been granted an appeal to this Court.

The case was submitted to this Court for decision upon the record made in the trial court and upon briefs

in writing and upon oral argument of counsel for the respective parties.

Errors alleged in the defendant's motion made pursuant to R.C.P. 50(b) and in the petition for appeal are summarized in the defendant's brief as follows:

1. Defendant's acts were those of the State of West Virginia, and it is therefore entitled to the sovereign immunity of the State of West Virginia.

2. The court's comment on evidence was prejudicial error.

3. Plaintiff's instruction No. 1 and counsel's argument misled the jurors as to the basis for recovery.

4. There was no competent evidence of damage upon which a verdict could be returned without speculation.

5. The injection of insurance into the trial of this cause was prejudicial.

In asserting that the defendant is entitled to governmental immunity, counsel rely upon portions of the testimony of Howard Karnes and George Neal, who were witnesses called by the defendant. Mr. Karnes was in charge of the blasting operations in connection with the highway construction project. In this connection, reliance is placed on the following portion of his testimony on direct examination:

Q. Mr. Karnes, while you were there you were working under the supervision of the State Road Commission?

A. Yes, sir.

Q. So that when shots were put off they were supervised by State Road Commission engineers, is that correct, sir?

A. Yes, sir.

Mr. Neal was field office manager for the defendant and in that capacity he took care of payrolls and other

matters pertaining to office work. The portion of his testimony on direct examination which is relied upon by counsel for the defendant in asserting governmental immunity is as follows:

Q. Mr. Neal, at all times was the work of Wood and Bush Company under the supervision of engineers from the State Road Commission of West Virginia?

A. Yes, sir, at all times. We followed the specifications on all the work.

Q. And was there a project engineer on the job all the time?

A. Yes, sir.

Q. Did he have to approve everything that Wood and Bush Company did?

A. That's right.

Q. And the manner that they were performing the work, is that correct?

A. That is true.

In referring to the testimony quoted above, counsel for the defendant make the following assertion in their brief: "Defendant is not, therefore, an independent contractor but is the employee of the State of West Virginia and, as such, should be entitled to the benefit of the sovereign immunity of this State." We are of the opinion that this contention is not supported by applicable law or by the facts appearing in the record. In making this contention by way of defense, the defendant states in its answer "that all acts performed by it were in connection with an agreement in writing with the State Road Commission of West Virginia, * * *." A pretrial order states that "certain agreements were reduced to writing" including the following issue of law: "Is the defendant, Wood & Bush Company, entitled to assert the defense of immunity to which the State of West Virginia is entitled under the Constitution, *by virtue of defendant's contract with the State Road Commission of West Virginia?*" (Italics supplied.)

We are of the opinion that the record discloses clearly that the defendant was acting as an independent contractor pursuant to a highway construction contract in accordance with the common practice and usual procedure in relation to matters of this character. Code, 1931, 17-4-19, as amended, is in part as follows: "All work of construction and reconstruction of State roads and bridges, * * * shall be done and furnished pursuant to contract * * *." The record discloses that the defendant was performing the construction contract by persons employed by it. There is no indication from the record that the State Road Commission had the right to employ or to discharge such personnel or to fix their compensation. It is common knowledge, we believe, that it is customary for the State Road Commission to have inspectors or engineers on road construction projects in order to determine that the construction work is being performed by the construction contractor in accordance with specifications and proper standards. This Court has held that an independent contractor performing a highway construction contract pursuant to a written contract with the State Road Commission is not entitled to governmental immunity in a case such as this. *Perdue* v. *S. J. Groves and Sons Company,* 152 W. Va. 222, pt. 4 syl., 161 S. E.2d 250.

The appellant asserts that the trial judge committed reversible error by improperly commenting on the weight of the evidence during the direct examination of Charles W. Stewart, a consulting engineer who testified as a witness in behalf of the plaintiff. The witness was permitted to testify, over defense objection, that certain cracks in a bedroom of the plaintiff's home "were either worsened or they were caused by the blasting." The defense objection to this testimony was in part as follows: "If he can only say worsened, I believe he will have to say expressly to what extent and how much worse they were worsened." The alleged improper comment by the trial judge upon the weight of the evi-

dence occurred in connection with additional testimony of the witness as follows:

> A.  * * * In the front of the house the chimney had some evidence originally of settling, but in my opinion it was worsened by this blasting to where it moved a considerable distance from the house.
>
> Mr. Schaub:  We will object to that, your honor, unless he can state, again, not the worsening but the actual cause.
>
> The Court:  Overruled.  I don't understand counsel's reasoning for objecting.  Even if there was a defect, if that defect is made worse by the blasting it means that counsel objects to the introduction of any evidence on it.  And I am allowing it, even though there was some defect before, if the defect was made worse by the blasting I think it would be proper to admit to it, and that is why I am overruling it.
>
> Mr. Schaub:  I understand.  Your honor, I think he would have to testify to the degree of worsening.
>
> The Court:  You can go into that on cross-examination.

The correctness of the trial court's ruling on the admissibility of the evidence has not been challenged.  In that connection, we note that other witnesses testified more precisely concerning the extent of the "worsening" caused by the blasting.  We are of the opinion, however, that the court's ruling on the admissibility of the evidence was proper.  We are also of the opinion that the court's remarks in this connection did not constitute an improper comment on the weight of the evidence.

It is well-settled that a trial judge should not comment on the weight of evidence bearing upon any factual matters submitted to the jury for decision and that a violation of this general rule may constitute reversible error.  *Steinbrecher* v. *Jones,* 151 W. Va. 462, pt. 7 syl., 153 S. E.2d 295; *Dye* v. *Rathbone,* 102 W. Va. 386, pt. 1 syl., 135 S. E. 274; *The State Road Commission* v. *Young,*

100 W. Va. 394, pt. 1 syl., 130 S. E. 478; *State* v. *Willey,* 97 W. Va. 253, pt. 2 syl., 125 S. E. 83; *State* v. *Austin,* 93 W. Va. 704, pts. 7 and 8 syl., 117 S. E. 607; *Buckhannon & Northern Railroad Co.* v. *Great Scott Coal & Coke Co.,* 75 W. Va. 423, pt. 17 syl., 83 S. E. 1031. Remarks of this character by a trial judge may be of such a prejudicial nature that objection thereto may properly be made for the first time on a motion for a new trial. *Neill* v. *Rogers Bro's Produce Co.,* 38 W. Va. 228, 18 S. E. 563. "It is not improper for the trial judge to express to the jury, or in their presence and hearing, his reasons for admitting or excluding particular evidence, provided his remarks are limited to the propriety of receiving the matter presented." 88 C.J.S., Trial, Section 50, page 132. See also *State* v. *Prater,* 52 W. Va. 132, pt. 15 syl., 43 S. E. 230; *Norfolk & W. Ry. Co.* v. *Spates,* 122 Va. 69, 94 S. E. 195. We are of the opinion that the remarks of the trial judge here in question constituted merely a statement of the legal basis for his ruling on the admissibility of evidence and that such remarks did not in any degree constitute a comment upon the weight of evidence.

As we have stated previously, one of the defendant's assignments of error is that Plaintiff's Instruction No. 1 and counsel's argument to the jury misled the jurors as to the basis for recovery. In this connection, reference is made to the following language used by one of the counsel for the plaintiff in the closing argument to the jury:

> Ladies and gentlemen, a house is not a house. A house is a home, when somebody lives in it like this lady here lived out there and took care of children for the D.P.A. That is not a house, it is a home.

Objection to the portion of the argument quoted above was apparently made aside from the presence and hearing of the jury after arguments to the jury had been concluded. The objection was as follows: "Your honor, this type of argument, a variation of the Golden Rule argument, has been many times held improper by our Su-

preme Court, and I will have to object to it." The objection was overruled. The so-called "golden rule argument" to a jury has been widely condemned as improper. *Keathley* v. *Chesapeake & Ohio Railway Co.,* 85 W. Va. 173, 185, 102 S. E. 244, 249; *Seymour* v. *Richardson,* 194 Va. 709, 715, 75 S. E.2d 77, 81; *Crosswhite* v. *Barnes,* 139 Va. 471, 124 S. E. 242; *P. Lorillard Co.* v. *Clay,* 127 Va. 734, 752, 104 S. E. 384, 390; Annot., 70 A.L.R. 2d 935. We are of the opinion that the argument complained of was not "a variation of the golden rule argument" and that this portion of counsel's argument was not at variance with legal principles stated in the authorities cited immediately above.

Plaintiff's Instruction No. 1 is as follows:

> The Court instructs the jury that every unauthorized entry upon the land of another is a trespass and that a trespass on the lands of another may be committed by blasting as well as by a person personally going upon said lands and if the lands of another are damaged as a result of the trespass by blasting, the one who does the blasting is liable therefor without proof of negligence.

> You are, therefore, instructed that if you believe from the evidence in this case that the defendant committed a trespass upon the lands of the plaintiff herein by means of blasting and if you further believe that damage resulted from said blasting, then you should find for the plaintiff and assess her damages against the defendant in such sum as you find is proven.

The only objection made to the giving of this instruction was as follows: "I object, your honor. Our theory of the law in this case does not go upon trespass upon the lands. And this would infer that this is so, and that the trespass itself is compensable. It is not."

No party may assign as error the giving of or the refusal to give an instruction unless, before the arguments to the jury are begun, he objects thereto by stating distinctly the matter to which he objects and

the grounds of his objection. *State Road Commission* v. *Bowling,* 152 W. Va. 688, pt. 1 syl., 166 S. E.2d 119; *Smith* v. *Edward M. Rude Carrier Corp.,* 151 W. Va. 322, 335, 151 S. E.2d 738, 745; *Nesbitt* v. *Flaccus,* 149 W. Va. 65, pt. 4 syl., 138 S. E.2d 859; *Graham* v. *Wriston,* 146 W. Va. 484, pt. 4 syl., 120 S. E.2d 713; R.C.P. 51. While the objection leaves something to be desired from the standpoint of clarity and preciseness, its basis appears to be that the instruction would permit a recovery of damages by the plaintiff for a mere naked trespass upon the plaintiff's real estate. We are of the opinion, however, that the instruction, when read in its entirety, makes it clear that there could be recovery of damages only if the blasting resulted in damage to the plaintiff's property. All instructions granted are read as a whole. *State Road Commission* v. *Bowling,* 152 W. Va. 688, pt. 3 syl., 166 S. E.2d. 119; *Mitchell* v. *The Virginian Railway Company,* 116 W. Va. 739, pt. 2 syl., 183 S. E. 35. Defendant's Instruction No. 2 makes it clear that the burden was upon the plaintiff to show that actual damage was caused to her property by the blasting performed by the defendant and also to show the extent of the damage.

We consider the objection to the plaintiff's instruction to be without merit. This does not mean that the Court holds that in all other respects the instruction was correct or that it had no tendency whatsoever to confuse or to mislead the jury. See *State Road Commission* v. *Bowling,* 152 W. Va. 688, 166 S. E.2d 119, 124. We are not called upon to decide and do not decide whether damage caused to the plaintiff's land by mere concussions and vibrations, in the absence of rocks or other debris being cast thereon, amounted to "a trespass upon the lands of the plaintiff." See 87 C.J.S., Trespass, Section 13c, pages 966-67. It might, with some reason, be asserted that the vibrations and concussions resulted in a trespass against the plaintiff's rights as a person and as a landowner and still not "a trespass upon the lands of the plaintiff" within the legal meaning and

516

common understanding of such language. *Leisure* v. *Monongahela Valley Traction Co.*, 85 W. Va. 346, 101 S. E. 737. Prior decisions of this Court have made it clear that a landowner may recover damages in a case such as this even though the damage to his property resulted merely from concussions and vibrations caused by the blasting, and that there may be such recovery in the absence of negligence. *Moore, Kelly & Reddish, Inc.* v. *Shannondale, Inc.*, 152 W. Va. 549, 165 S. E.2d 113; *Perdue* v. *S. J. Groves and Sons Company*, 152 W. Va. 222, 161 S. E.2d 250; *Konchesky* v. *S. J. Groves and Sons Co., Inc.*, 148 W. Va. 411, pt. 2 syl., 135 S. E.2d 299; *Whitney* v. *Ralph Myers Contracting Corporation*, 146 W. Va. 130, 118 S. E.2d 622; *Pope* v. *Edward M. Rude Carrier Corp.*, 138 W. Va. 218, 237-38, 75 S. E.2d 584, 594-95. We doubt the wisdom of plaintiff's counsel in having added something to this clear and simple rule by having the trial court instruct the jury, as a matter of law, that damage caused to the plaintiff's land by the vibrations and concussions amounted to "a trespass upon the lands of the plaintiff."

In asserting that there was no competent evidence of damage upon which a verdict could be returned without speculation, counsel for the defendant place considerable emphasis upon certain isolated portions of the testimony of the plaintiff and of Oman Arthur, who was a witness for the plaintiff. The plaintiff testified that the fair market value of her property before the blasting was "about $17,000" and that its fair market value after the blasting ceased was "about $3,000, I would think." When asked whether she was acquainted with "the value of real estate in that vicinity", she replied: "Yes, pretty good." She testified that her house was constructed in 1951 and 1952; that her husband, who was deceased at the time of the trial, commenced the construction and that a contractor finished it; that her estimate or opinion of the fair market value of the house before the blasting was based on notes or records which

were kept by her husband during the course of the construction; and that the total cost reflected by such notes or records was "seventeen thousand two hundred and something." The plaintiff testified in detail concerning the nature of damage caused to various portions of her property and identified various photographs which, she testified, disclosed damage caused to various parts of her property by the blasting operations, which were conducted by the defendant over a period of months in 1964.

Oman Arthur was a witness for the plaintiff in relation to damages caused to her property. He testified that his home was about twenty-six hundred feet from the plaintiff's home; that he had been in the plaintiff's home six or eight times before the blasting was commenced and also on occasions after the blasting ceased; that he had been engaged in the business of building and selling houses since 1940; and that he was familiar with the value of real estate in the vicinity in which the plaintiff's home was located. When asked whether he was familiar with the fair market value of the plaintiff's home, he replied: "Well, in one way I am and one way I ain't, to tell the truth about it. I never looked at the property to buy it. Just to look at it in the neighborhood before the blasting started, I would say it was worth between sixteen and seventeen thousand dollars, that is about the way the property was selling at that time." When asked for his opinion of the fair market value "since the blasts", he replied: "Well, as much as it would cost to fix it up I wouldn't pay over $2,500 for it at this time."

Additional testimony was adduced in behalf of the plaintiff to show the nature and extent of damage alleged to have been caused to the plaintiff's property by the blasting operations performed by the defendant. The defendant, of course, introduced testimony tending to show that the damage caused to the plaintiff's home was not as great in extent and value as the testimony in

behalf of the plaintiff indicated. We cannot say that the jury verdict in the amount of $7,000, approved by the trial court, was in any sense unwarranted by the evidence, or that it was based on mere speculation.

The general rule governing the amount of damages properly recoverable in a case of this character is to determine the difference in the fair market value of the land before the damage was caused and the fair market value thereof as diminished by the damage proximately caused by the defendant's blasting operations. *Konchesky* v. *S. J. Groves and Sons Co., Inc.,* 148 W. Va. 411, pt. 3 syl., 135 S. E.2d 299. Opinion evidence dealing with value and damages to land is admissible if the witness has some peculiar qualification or more knowledge than jurors are ordinarily supposed to have. *Moore, Kelly & Reddish, Inc.* v. *Shannondale, Inc.,* 152 W. Va. 549, 165 S. E.2d 113, 124; *Brown* v. *Crozer Coal & Land Company,* 144 W. Va. 296, pt. 9 syl., 107 S. E.2d 777; *Toppins* v. *Oshel,* 141 W. Va. 152, pt. 8 syl., 89 S. E.2d 359; *Tennessee Gas Transmission Company* v. *Fox,* 134 W. Va. 106, 112-13, 58 S. E.2d 584, 589.

A jury verdict involving damages which are indeterminate in character, based on conflicting testimony and approved by the trial court, will not be set aside on appeal unless it is clearly wrong or without evidence to support it. *Moore, Kelly & Reddish, Inc.* v. *Shannondale, Inc.,* 152 W. Va. 549, 563, 165 S. E.2d 113, 122; *Shaeffer* v. *Burton,* 151 W. Va. 761, pts. 4 and 5 syl., 155 S. E.2d 884; *Nesbitt* v. *Flaccus,* 149 W. Va. 65, pts. 5 and 6 syl., 138 S. E. 859; *Walker* v. *Monongahela Power Company,* 147 W. Va. 825, pts. 1, 2 and 3 syl., 131 S. E.2d 736; *Earl T. Browder, Inc.* v. *The County Court of Webster County,* 145 W. Va. 696, pt. 6 syl., 116 S. E.2d 867.

The allegedly improper injection of the element of insurance arose in connection with the testimony of L. R. Dorsey, a witness for the defendant, during the course of the cross-examination of the witness by counsel for

the plaintiff. The witness testified that he was a con-
tractor and that he had been engaged in the business
of building and repairing houses for thirty years. He
testified that he inspected the houses belonging to the
plaintiff on March 25, 1964, before the blasting oper-
ations had been commenced, for the purpose of checking
"pre-blasts on a number of houses". He subsequently in-
spected the plaintiff's property on September 28 of the
same year, after the blasting operations had been ter-
minated. His testimony indicated considerably less dam-
age to the plaintiff's property than was detailed and
described by the plaintiff and witnesses called in her
behalf. It is obvious from the record that, during the
cross-examination, counsel had in his possession that
which he referred to as "your report to these people".
One of the questions propounded to the witness on cross-
examination was as follows: "That is on your estimate
which you furnished, and which they had to furnish
me a copy of. Read it to us." The witness testified that
he could not see any difference in the condition of the
plaintiff's walks about her home between the time of
his two visits, though testimony of plaintiff and her
witnesses indicated that considerable damage was caused
to the walks during the period of the blasting operations.
The following occurred during the cross-examination of
the witness in the presence of the jury:

Q. So no walks are figured because you couldn't
see any difference. Then why did you put
these other things in if you couldn't see any
difference?

A. Because I was asked to.

Q. By whom?
Mr. Schaub: It was at my request.

Q. Just a minute. By whom?
A. (Pause)

The Court: Who asked you?
A. Can I say that, sir?

The Court: Yes, answer.

A. Can I ask you a question?

The Court: No, don't ask me any question. Answer the question and answer promptly, who told you to do that.

A. The Travelers Insurance Company. But I thought you weren't supposed to say that. Is that all right?

The Court: All right.

Mr. Ketchum: No more questions.

The Court: He may be excused.

(Whereupon the witness was excused.)

Mr. Schaub: I have a motion to make outside the hearing of the jury.

Thereupon the trial judge and counsel retired into "the court's chambers" where the following proceedings were had out of the presence and hearing of the jury:

Mr. Schaub: Now comes the defendant and moves for a mistrial on the basis that in response to a question by counsel for plaintiff the question of insurance coverage was injected into this action.

Counsel will further say that under all the decisions of our state that this is prejudicial, reversible error, and is not the type that can be cured by an admonition from the court.

Counsel for defendant further says that Mr. Ketchum, counsel for the plaintiff, had in his hands copies of reports and estimates which had been furnished by me, *and which letters and estimates were addressed to the Travelers Insurance Company at their claim office in Charleston, West Virginia.* (Italics supplied.)

Counsel further says that Mr. Ketchum had asked the witness, Dorsey, if this particular woman had asked him, and he said no, he had not gone out there at her request.

And further, counsel for defendant says that I had, myself, stated just shortly before, in an effort to avoid prejudicial error in

this case, that this had been done at my request.

Mr. Ketchum: Your honor—

The Court: Overruled.

The statement of counsel for the defendant embodied in the italicized portion of his objection has not, so far as we can discern, been challenged or denied. The trial court apparently treated that assertion of fact as a matter having no material bearing upon the question posed by the motion for a mistrial.

In the early portion of the cross-examination of this witness, the following proceedings occurred:

Q. How long have you been appraising for Wood and Bush, for their damage?

A. Well, actually that is—I don't do appraising for Wood and Bush. I did a pre-blast survey.

Q. How long have you been working for Wood and Bush is what I want to know?

A. I believe, sir, that this job over here is the only—is the first that I believe I ever done for Wood and Bush. And I believe it is the only one I ever done for Wood and Bush.

Q. Do you know why they went clear to Charleston to get a contractor and didn't call one in Huntington?

Mr. Schaub: Now, your Honor—

Mr. Ketchum: Well, I am asking—

The Court: I will sustain the objection.

Q. Did you take this on by bid, or did they come up and get you?

A. No, I do it by the day.

At the conclusion of the taking of all the testimony, the court and counsel retired into chambers where the motion for a mistrial was renewed as follows:

Mr. Schaub: Now comes the defendant by counsel and again moves for a mistrial on the

basis that insurance has been injected into this action; that it is prejudicial; and that under the recognized laws of this state that it is clearly reversible error, particularly when it is probed after as hard as Mr. Ketchum did.

The Court: Overruled.

The motion for a mistrial, promptly made and subsequently renewed, was a proper procedure by which to make the objection that the element of insurance coverage was improperly injected into the case. *Leftwich* v. *Wesco Corporation,* 146 W. Va. 196, pt. 10 syl., 119 S. E.2d 401.

"The jury should not in any manner be apprised of the fact that the defendant is protected by indemnity insurance, and such action on the part of plaintiff or his counsel will ordinarily constitute reversible error, notwithstanding the court may instruct the jury not to consider the same in arriving at a verdict." *Wilkins* v. *Schwartz,* 101 W. Va. 337, pt. 1 syl., 132 S. E. 887. To the same effect see *Crum* v. *Ward,* 146 W. Va. 421, 436, 122 S. E.2d 18, 27; *Graham* v. *Wriston,* 146 W. Va. 484, 489-91, 120 S. E.2d 713, 718-19; *Leftwich* v. *Wesco Corporation,* 146 W. Va. 196, pt. 9 syl., 119 S. E.2d 401; *Flanagan* v. *Mott,* 145 W. Va. 220, pt. 6 syl., 114 S. E.2d 331. There are certain exceptions to the general rule stated above. *Leftwich* v. *Wesco Corporation,* 146 W. Va. 196, 216, 119 S. E.2d 401, 413. We are of the opinion that the present case does not fall within the category of any of such exceptions. It could not be inferred reasonably by the jury that this witness, who testified so favorably for the defendant, had been requested by an insurer of the plaintiff to make surveys of the damage to the plaintiff's property. It cannot be said that the statement of the witness here in question was inadvertent, that it was volunteered by the witness or that it was to any degree induced by the defendant or its counsel. There is no indication that the witness was hostile or biased other than the mere fact that his testimony differed

materially from that of the plaintiff and her witnesses. It is apparent from the prior testimony of the witness, we believe, that he was sent to the area of this construction project to make "pre-blast" inspections of property owned by various persons and that such inspections were not being made at the request of either the plaintiff or Wood & Bush Company. It is clear from the record that, during the cross-examination, counsel for the plaintiff had in his possession a copy of the inspection report made by the witness. It is also clear from the record, we believe, that this report disclosed that it was made for and directed to the Travelers Insurance Company. The witness made it apparent and obvious that he doubted the propriety of answering the question, the answer to which made reference to the insurance. The answer was made unwillingly by the witness, over objection of counsel for the defendant, after a rigorous and persistent cross-examination. The answer was not only induced by the persistence of counsel for the plaintiff; it was made unwillingly by the witness at the command of the trial judge.

We are of the opinion that the trial court committed reversible error in overruling the motion for a mistrial and also in refusing to grant the defendant a new trial.

For reasons stated in this opinion, the judgment of the Circuit Court of Cabell County is reversed, the verdict of the jury is set aside and the defendant is awarded a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*