## CHARLESTON.

THE STATE ROAD COMMISSION *v.* WILLIAM M. YOUNG

(No. 5322)

Submtted November 3, 1925. Decided November 10, 1925.

1. APPEAL AND ERROR—TRIAL—*Judge, in Trial to Ascertain Damages for Land Taken or Demanded for Public Use, Should Not Express Opinion on Weight of Evidence or Extent of Damages; Finding as to Damages for Land Taken or Damaged for Public Use Set Aside for Judge's Expression of Views on Weight of Evidence or Extent of Damages.*

   In a trial to ascertain damages to which a landowner is entitled for land taken or damaged for public use, the jury is the trier of facts at issue, and the trial judge should refrain from expressing, in any manner, in their presence, his personal views upon the weight of the evidence or the extent of the damages. Where the court has invaded the province of the jury in that regard, the finding of the jury will be set aside on motion of the injured party, unless it can be clearly seen that no injury has resulted. (p. 395.)
   (Appeal and Error, 4 C. J. § 3019; Trial, 38 Cyc. p. 1317.)

2. JURY—*Objection to Juror for Want of Freehold Qualification Too Late After Verdict.*

   Point 3 of the syllabus in *Ohio River R. R. Co.* v. *Blake,* 38 W. Va. 718, approved and applied. (p. 399.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Roane County.

Suit by the State Road Commission against William M. Young to condemn a right of way. From a judgment for defendant for less than he asked, defendant appeals.

   *Judgment reversed; verdict set aside; new trial.*

*Wm. S. Ryan* and *Thos. P. Ryan,* for appellant.

LIVELY, PRESIDENT:

Appellant, William M. Young, appeals from a judgment rendered in a condemnation proceeding.

The State Road Commission instituted an action against defendant Young, seeking to condemn a right-of-way through his lands for a state highway.  Commissioners appointed upon application of the Commission, went upon defendant's property, and on February 9, 1924, made their report awarding him $250.00 for said right-of-way. Young refused to accept this award and appealed to the circuit court, where, on Sept. 25, 1925, a trial by jury was had, resulting in a verdict of $250.00 in favor of Young, and a judgment against him for costs (the verdict being no greater than the award of the commissioners.)

Among the points of error relied upon for reversal is, that the record does not show that plaintiff State Road Commission had any authority in law to institute any such suit against defendant herein.   It is contended that there is nothing in the evidence showing that the plaintiff had ever taken over this road, under Sec. 20, Chap. 6, Acts 1923, or was interested in the matter in any way, or whether the county court had refused to acquire the right of way under Sec. 31, Chap. 6, Acts 1923; that it does not appear from the evidence whether this is a state road or is a county-district road. Under the statute the State Road Commission is made a body corporate and is entitled to sue in that name, and it is given express authority to institute proceedings of this character. The record shows that the road in question is a state highway, being a part of "Project No. 3240" and "State Route No. 14". It will be presumed, in the absence of a contrary showing, that the road has been taken over by the Commission in the manner prescribed by law, and that the Commission is proceeding to act because the county has failed to provide the right of way within the time prescribed by Sec. 31, Chap. 6, Acts 1923, if such latter step be necessary before the institution of condemnation proceedings by the Commission.   The law will presume that the Commission, when it comes into court, comes qualified to sue, until the contrary be shown, as in the case of any other suitor.

Another point of error relied upon by defendant relates to

prejudicial remarks made by the court in the presence of the jury. Space will not permit the setting out of all the alleged prejudicial utterances contained in defendant's bill of exceptions No. 2, but certain ones illustrative of their general tenor will be detailed. During the course of the trial and after witness Gibson had just answered a question, the court said, ''Now Mr. Gibson, do you believe that these taxpayers that live on these muddy roads ought to pay for the hard roads that go through the county, people living right on them and have the use of them, do you believe that these fellows that can't get roads built through their land ought to be chargeable with heavy taxes to pay large damages to people who have the road built through their farms?'' and again, ''I want to know about this. You know that is on the leading road between Parkersburg, Spencer, Walton, Clendenin and Charleston. Now, is it your idea that this road after it is put through there, these fellows who live out on these mud roads ought to pay taxes to pay damages to these men that it goes through their farms? also, the court remarked, ''You see these taxes are paid by men who do not live on these fine roads. Again, ''This is what I mean: I own an interest in a fine farm in Jackson County. There is no road through it, and the owners will give a thousand dollars to get a hard road put through it and give the right-of-way. The reason I asked that is just for cases like that. We can't get a hard road through there, it seems, and yet our land is taxed at about $35.00 per acre.'' During the further progress of the trial the court made the following remark to the jury: ''Gentlemen, you will have no talk with any one about this case. This is an important case to a good many people. The jury should not discuss this case among yourselves or allow any one to talk about it in your presence. You were out there and saw the conditions and you are perhaps, as able to judge about the conditions there as the witnesses who testified before you, but they have a right to examine the witnesses until they get through, because the case may not end here.'' And later on during the trial and in the presence of the jury, the judge said, ''I will give a thousand dollars to build a road

through my farm and give a right-of-way besides''. All of these remarks were objected and excepted to by defendant and were incorporated in his bill of exceptions No. 2 signed by the court.

It would serve no useful purpose to give any more of the alleged prejudicial remarks. It suffices to say that the record includes a number of utterances of like import. The circuit judge was evidently a proponent of good roads, but he should not have allowed his fervor in that regard to impel him to make an expression of his views in the presence of the jury to the extent apparent from the record. The jurors are the triers of fact, and should be free from the court's opinion as to the weight of evidence, or as to the amount of damages they should find. A judge is vested with superior authority; is supposed to be disinterested; possesses an experience not available to the ordinary layman; and jurors are often anxious to obtain his point of view, upon which to base their conclusions. Consequently, even a slight remark from the judge, evidencing his views as to the weight of evidence or credibility of witnesses, or as to the merits of the case, may have a decided weight in shaping the opinion of the jury. *State* v. *Austin*, 93 W. Va. 704. He should exercise great caution not to intimate in any way his opinion upon any facts in issue, either directly or indirectly. ''The influence of the court over its juries is so apparent and so well recognized that, to preserve the jury system in its ancient vigor and splendor, as the sole arbiter of the facts, the judiciary should studiously and jealously refrain from impressing, in any manner, on the jury its view of fact, or the weight or credibility it would give to testimony.'' *State* v. *Willey*, 97 W. Va. 253, 125 S. E. 83. It is clear that the remarks of the court were prejudicial, and constitute reversible error.

Defendant assigns as error the fact that he was served with notice that the application for appointment of commissioners would be made to the court on the 25th day of January, when, as a fact, the application was made on the following day, the 26th. The notice and application do not show when they were filed in court, but the order of the 26th appointing the com-

missioners does say that application was filed at a former day of the term. No exception to want of notice was at any time made; nor was there any exception made to the report of the commissioners appointed, on the ground that defendant did not have notice of the time they would view his land for the purpose of assessing damages. The exceptions are to the matter contained in the report itself. Defendant waived these alleged errors when he appeared generally and asked for a jury. If he was dissatisfied with the award of the commissioners, because of want of opportunity to present his case to them, if, in fact, he had no such opportunity, the lower court should have had its attention directed thereto by motion to recommit, or some like motion indicating defendant's desire to develop his case before the commissioners. Without doing that, defendant has sought another method of protecting his rights, namely, a jury's verdict, where he could and did have a full development of his case. He made a general appearance and by his own motion took the only question in issue to a court and jury. "The taking and prosecuting of an appeal is equivalent to an appearance, and waives the defects of want of notice or jurisdiction of the person." 20 C. J. Sec. 355, page 944. While the taking of the issue from the commissioners to a jury is not an appeal in the technical sense of the term, the principle of waiver of technical errors will apply.

Error is also assigned because of the failure of the record to show the jury selected was composed of freeholders. *Thorne* v. *City of Clarksburg*, 88 W. Va. 251, is cited and relied upon to support this proposition. In the instant case defendant did not demand that the jury should be composed of freeholders, nor does it appear from the record that he interposed any objection to the jury on that ground, either before or after the verdict. It is too late to raise the point in the appellate court for the first time. Judge MILLER in the *Thorne case, supra,* said: "In this case the demand of the plaintiff was twice rejected by the court. The court refused to require a jury of freeholders, presumptively, therefore, they were not all freeholders. *If no demand or objection had been made,* the rule of *Ohio River R. R. Co.* v. *Blake,* 38 W. Va.

718, syl. 3, would apply." Point three of the syllabus of *Ohio River R. R. Co., supra,* is as follows: "No objection having been·sooner made against a juror for want of freehold qualification, it is too late after verdict in such a proceeding to make such objection based on affidavit or other evidence dehors the record."

The case will be reversed on the ground hereinbefore·indicated, and will be sent back for a new trial.

*Judgment reversed; verdict set aside; new trial.*