164 S.E.2d 414 (1968)
STATE ex rel. DAILY GAZETTE COMPANY, a corporation and W. E. Chilton
v.
Robert D. BAILEY, as Secretary of State of West Virginia.
No. 12744.
Supreme Court of Appeals of West Virginia.
Submitted June 11, 1968.
Decided July 23, 1968.
Dissenting Opinion Filed November 19, 1968.
Rehearing Denied December 16, 1968.
*415 Jackson, Kelly, Holt & O'Farrell, F. Paul Chambers, James K. Brown, Forrest H. Roles, E. B. Brown, Charleston, for relators.
C. Donald Robertson, Atty. Gen., Leo Catsonis, Asst. Atty. Gen., Charleston, for respondent.
CAPLAN, Judge.
This is an original proceeding in mandamus wherein the petitioners, the Daily Gazette Company, a corporation, and W. E. Chilton, III, a citizen and taxpayer of Charleston, Kanawha County, West Virginia, a duly registered and qualified voter thereof, and the president of the aforesaid corporation, seek a writ to compel the respondent, Robert D. Bailey, Secretary of State of West Virginia, to permit the petitioners "to inspect the certificates on file in his office which purport to establish the right of the `American Party', its candidates for President and Vice President of the United States and its electors, all therein named, to appear upon the general election ballot in the November, 1968, general election in West Virginia, and to copy or have copied therefrom such information appearing on such certificates as they may deem pertinent for their aforesaid purposes, * * *." It is the position of the petitioners that when a voter signed such certificate his act constituted a transfer of party registration; that voter registration is a matter of public record; and that they should therefore be permitted to examine and copy such records.
The respondent, on the other hand, denies that these certificates became public records. Consequently, he says that the petitioners have failed to show a clear legal right to the relief sought.
On the 23rd day of July 1968, this Court, by order, denied the writ of mandamus, holding that the petitioners failed to show a clear legal right to the relief requested. This opinion is now filed for the purpose of stating the reasons for the holding in the aforesaid order.
The petitioners are engaged in the business of publishing a newspaper, the Charleston Gazette. As alleged in their petition, they collect and publish information believed to be of interest and value to the citizens, taxpayers and voters of our state and publish editorial comment in respect thereto. They further allege that the success of the newspaper depends in large measure upon their ability to obtain reasonable access to public records *416 concerning the operation of government and political parties. According to the petitioners, it is for this avowed purpose that they sought access to the names of those who signed certain certificates which are hereinafter more fully described.
This controversy arose out of a sequence of events beginning with the filing of a declaration, with the Secretary of State, by certain persons representing the American Party. This declaration was filed in accordance with the provisions of Code, 1931, 3-5-23 and 24, as amended, which provides in essence, that any group of citizens having no party organization may nominate candidates for public office otherwise than by conventions or primary elections. The declaration having been filed, the supporters of the American Party began the solicitation of signatures in order to obtain the number required by the aforesaid statute. Section 23 provides: "The number of such signatures shall be equal to not less than one per cent of the entire vote cast at the last preceding general election for the office in the State, district, county or other political division for which the nomination is to be made, but in no event shall the number be less than twenty-five. * * *"
It is readily acknowledged by all parties that the number of signatures obtained on said certificates substantially exceeded the requirement of the statute.
It became apparent through certain statements made by petitioner Chilton that he and the newspaper which he represents opposed the American Party and its candidate for President, George C. Wallace of Alabama, and that he intended to publish the names of signers of the American Party certificates. Furthermore, it appears from an affidavit which is undisputed by evidence that the petitioners' purpose in publishing such names was to discourage prospective signers from placing their names on such certificates. The petitioners made a demand on the Secretary of State that their representatives be permitted to examine and make copies of the certificates, in whole or in part. They acknowledged that the Secretary of State may make reasonable restrictions so as to not disrupt the operation of his office.
The Secretary of State, by letter refused to comply with the demand of the petitioners stating therein that "By signing the petition they have nominated a candidate. In other words, they have cast a ballot just as a Democrat or Republican who votes for the candidates on his ticket. Publishing the names of these people would be the same as making public the primary ballots of the Democrats and Republicans. It would destroy the secret ballot. * *" The respondent further indicated that even if the certificates constituted public records they would not be available to one for an improper or useless purpose. Thereafter the petitioners instituted this action.
In resolving the issues raised in this proceeding it becomes necessary to determine the nature of the certificates provided for in Code, 1931, 3-5-23, as amended, and which are the subject of this controversy. We must, therefore, examine the aforesaid statute.
The legislature has declared that candidates may be nominated for political office in a manner other than by conventions or primary elections. This declaration has been made in the following words: "(a) Groups of citizens having no party organization may nominate candidates for public office otherwise than by conventions or primary elections. * * *." Code, 1931, 3-5-23, as amended. This code section further provides that persons soliciting or canvassing signatures of duly qualified voters on such certificates are attempting to have such voters "sign a certificate purporting to nominate" a candidate for office to represent a certain party at the next general election. Clearly indicating that the signers of such certificates have already voted for the nomination of their candidate, the legislature, in said statute, restricted the signers in the following manner: *417 "No person signing such certificate shall vote at any primary election to be held to nominate candidates for office to be voted for at the election to be held next after the date of signing such certificate; * * *."
In subsection (d) of Code, 1931, 3-5-23, as amended, it is provided that the subscribers to the certificates are "legally qualified and duly registered as voters and desire to vote for such candidates; * *." It is further stipulated in the statute that "All candidates nominated by the signing of such certificates shall have their names placed on the official ballot as candidates, as if otherwise nominated under the provisions of this chapter. * * *."
In addition to the above quoted statutory provisions, it is pertinent to note the language suggested by the legislature for the certificate. It reads in part: "This is to certify that we the undersigned, * * * do hereby make the following nominations for public office * * *." (Emphasis supplied where statute is quoted)
Although the petitioners do not challenge the validity of a nomination made pursuant to the provisions of Code, 1931, 3-5-23, as amended, they nonetheless contend that such certificates do not constitute ballots or votes by the signers thereof, but that they are public records and are subject to inspection.
As a further ground for their position that the subject certificates are public records the petitioners say that the signers of such certificates merely effected a temporary change in their voter registration and that since registration records are available for public inspection, these certificates should likewise be so available.
Considering the latter contention of the petitioners, we do not agree that the certificates constitute registration records of a new political party; nor do we agree that the signers thereof effected a change in their voter registration. Laws pertaining to registration of voters are designed to ascertain the electors who are qualified to cast votes. The purpose of registration statutes is to protect the purity of the ballot box by determining before the vote is cast whether such person possesses the qualifications to vote. 25 Am.Jur.2d, Elections, Section 95. To effectuate this purpose our legislature enacted Article 2 of Chapter 3 of the West Virginia Code. This article is entitled "Registration of Voters" and contains in detail, the various aspects of voter registration, including the manner in which a voter shall register and the method of transfer or change of voter registration. The act of signing the certificates in the instant case in no way complies with the requirements of said Article 2, pertaining to registration or change of voter registration. These certificates, therefore, cannot be considered as registration records.
The petitioners assert that the signers of these "petitions" did not take part in an election and did not cast a ballot in the constitutional sense. At the outset of the discussion of this point it is pertinent to note that the petitioners obviously erred by their use of the word "petitions" in referring to the paper signed by those desiring to place George C. Wallace on the ballot in the general election. These signers placed their signatures on a certificate of nomination, not a petition. This is evidenced beyond question by the language used in Code, 1931, 3-5-23 and 24, as amended. Section 24, entitled, "Filing of nomination certificates; time," reads, in part, "All certificates nominating candidates for office under the preceding section [§ 3-5-23], * * *."
These signers were not making a supplication or request to a superior or to a group in authority, as in the connotation of a petition. They were affirmatively making a nomination, which, if done in accordance with the appropriate statute, would succeed in placing their candidate on the ballot in the general election.
*418 While the act of signing the subject certificate does not constitute a vote in the usual sense, nor is the certificate a ballot as provided in Code, 1931, 3-1-4, as amended, such act is so analogous to the voting process that it is entitled to the same consideration as a vote by ballot. This would not be so, were it not for the provisions of Code, 1931, 3-5-23 and 24, as amended. However, the legislature did provide this method for making a nomination for those who had no party organization. The signers of the certificates in the instant case undertook to nominate their candidate in the only manner open to them under the law. It is most relevant that these signers are required by statute to be "legally registered and qualified voters," and that they may subscribe to such certificate only in the magisterial district in which they are qualified to vote. Also relevant is the fact that one who signs such certificate is precluded from casting a further vote at the primary election.
Voters who are registered as Republicans or Democrats are entitled by law to cast a secret vote for the candidate of their choice at a primary election. As noted above, the signers of these certificates cast their votes for their choice of candidates in the only manner allowed by law. We perceive no reason why the votes of the latter group should not be afforded the same secrecy, if desired, as those of the members of the two major political parties. Furthermore, we find without merit the argument that because there is not total secrecy of the signatures on the certificate they should be available for public inspection. While the signers must realize that the solicitors of their signatures would see their names, they do not necessarily intend that they be available to the general public.
It is further contended by the petitioners that the failure to publish the names which appear on the certificates would encourage forgery or other types of fraud or irregularity in the election processes. The respondent affirmatively alleged that, as the chief election officer of the state, he took steps to insure that only valid signatures would be counted in the total required by the statute. Names were checked with local election officials and it was determined that sufficient valid signatures were submitted to permit the name of George C. Wallace to be placed on the ballot in the general election. The respondent is charged with the duties of preventing and investigating election frauds or irregularities. He has performed these duties and there is no allegation to the contrary. In the absence of evidence to the contrary, public officers will be presumed to have properly performed their duties. 43 Am.Jur., Public Officers, Section 511; 29 Am.Jur.2nd, Evidence, Section 171; 7 M.J., Evidence, Section 25. See also State ex rel. Powers v. Boles, 149 W.Va. 6, 138 S.E.2d 159; State ex rel. Bumgardner v. Mills, 132 W.Va. 580, 53 S.E.2d 416; and Wilson v. Fleming, 89 W.Va. 553, 109 S.E. 810. There being no assertion of the existence of fraud or irregularity or that the respondent has failed to perform his duties, it must be presumed that such duties have been performed and that the procedures for nominating a candidate, as prescribed by the provisions of Code, 1931, 3-5-23 and 24, as amended, are regular.
Although under the provisions of Code, 1931, 3-5-24, as amended, the subject certificates are required to be filed in the office of the Secretary of State, a public office, they are not, for that reason alone, available for public inspection. Even if they constituted public records, they are not necessarily available to all who desire to inspect them. This was succinctly expressed in State v. Harrison, 130 W.Va. 246, 43 S.E.2d 214, as follows: "The right to inspect a public record does not attach to all persons or to every situation. He who asserts that right must have some interest in the record of which he seeks inspection, and the inspection must be for a legitimate purpose. There is no right of inspection of a public record when *419 the inspection is sought to satisfy a person's mere whim or fancy, to engage in a pastime, to create scandal, to degrade another, to injure public morals, or to further any improper or useless end or purpose." See also State ex rel. Charleston Mail Assn. v. Kelly, 149 W.Va. 766, 143 S.E.2d 136 and Taxpayers Ass'n of Cape May v. City of Cape May, 2 N.J. Super. 27, 64 A.2d 453. In Hall v. Staunton, 55 W.Va. 684, 47 S.E. 265, the Court said: "The extraordinary writ of mandamus will never be issued in any case where it is unnecessary, or where, if issued, it would prove unavailing, fruitless, and nugatory. The court will not compel the doing of vain thing. A mere abstract right, unattended by any substantial benefit to the party asking mandamus, will not be enforced by the writ."
In view of the showing made by the respondent that stringent measures were taken to ascertain that the signatures on the certificates were valid and that the statute was being scrupulously followed, we fail to see the usefulness of the petitioners' demand. In fact, by reason of the exhibits in the record of this proceeding, it appears clear that the principal purpose of the petitioners, in their desire to publish the names of the signers of the certificates, was to dissuade persons from supporting the American Party. The record reveals that many signers of the certificates indicated that they would not have signed had they believed their names would be published. The petitioners have every right to oppose, editorially and by other lawful means, the American Party and its candidates. Likewise, any group of citizens desiring to nominate a candidate under the provisions of Code, 1931, 3-5-23 and 24, as amended, has a right to do so free from intimidation, harassment and embarrassment.
The petitioners rely on State ex rel. Charleston Mail Ass'n v. Kelly, 149 W. Va. 766, 143 S.E.2d 136, for the proposition that the subject certificates constitute public records and are therefore available to the press for inspection. The Kelly case is readily distinguishable from the case under consideration.
The record in the Kelly case was determined to be a public record. It pertained to the deposit of public monies. As indicated in Syllabus No. 2: "A citizen, taxpayer and voter of this state has sufficient interest in a public record which reflects the manner in which state monies are deposited to entitle him to a right to inspect such record, provided such inspection is for a useful and legitimate purpose."
In the instant case the records on file in the office of the Secretary of State are records of the manner in which the signers of the certificates voted and nominated a candidate for public office. This is a record of a vote; it is not a public record. Even if these certificates were determined to constitute public records, for the reasons stated in State v. Harrison, 130 W.Va. 246, 43 S.E.2d 214, and Hall v. Staunton, 55 W.Va. 684, 47 S.E. 265, as hereinbefore noted, they would not be subject to inspection by the petitioners.
For the reasons stated herein we find, and so hold, that the petitioners have failed to show a clear legal right to the relief sought. The writ of mandamus is therefore denied.
Writ denied.
BROWNING, Judge (dissenting).
It is with deference and respectfully that I find myself in disagreement with the majority of this Court in its determination to refuse the petitioners a writ of mandamus directing the respondent Secretary of State to permit them to inspect, at an appropriate time and place, the petitions by which it is alleged that a new party, the American Party or, as recently styled, the American Independent Party, was at least temporarily formed in this state and by which candidates of that party for president *420 and vice president were alleged to be nominated. It is my opinion that the majority reached its erroneous conclusion by reasoning from a false premise, and that they erred in concluding that because the word "nomination" is found in the language of Code, 3-5-23, 24, as amended, and because Code, 3-1-4, as amended, provides that voters in all elections shall have the choice of voting either an "open, sealed or secret ballot" that, ipso facto, the signers of nominating petitions have the same right. In other words, it is my opinion that the majority quietly amended the pertinent sections of the statute, as it is alleged courts are sometimes tempted to do, so that the nominating procedures as provided by statute in this state would be uniform. I am inclined to believe the amendment a good one, but I fear that in view of the provisions of Article V, Section 1 of the constitution of this state that only the legislature has the power to so amend the pertinent statutes.
The history of elections, primary elections, and other means of nominating candidates in this country and particularly in this state is important in determining the primary issue in this case. The constitution of the United States provides for no primary election and neither does the constitution of the State of West Virginia. It was not until the year 1915 that the legislature promulgated legislation regulating primary elections. Chapter 3 of the Code of West Virginia, as amended, is entitled "West Virginia Election Code". Article 1, Section 2 of that chapter provides in part that "* * * the provisions of this chapter shall apply to every general, primary, and special election in which candidates are nominated or elected or in which voters pass upon any public question submitted to them, * * *." By the ancient rule of statutory construction the mention of one necessarily eliminates all others. In other words the language of that chapter except wherein it is specifically provided otherwise does not apply to conventions and nominating procedures by a party whose members did not cast as much as ten per cent of the total vote for the office of governor in the previous general election. I have carefully read the three sections of Article 5 relating to "certificate nominations" and find no provision whatever that there shall be any secrecy with regard thereto. Neither do I find that a delegate to a convention in the instances where such a procedure is still available to nominate candidates, has the right to lock the doors of the convention hall and cast his vote secretly with regard to his fellow delegates, the press and others. To repeat, I have no complaint with the finding of the majority that candidates may be "nominated" by the means provided in Sections 23 and 24 and it is obvious that the majority by italicizing the word nominate where used in those sections relied upon such language as being determinative of the issue before this Court. I agree that candidates may be nominated by the petition or certificate procedure, that they may be nominated in a proper case by convention, and that in all other cases they are to be nominated by primary elections, but that does not mean that every section of the code of this state applicable to primary elections is also applicable to conventions and the certificate procedure of nominating candidates. The legislature of this state could very well have made the casting of a vote at a convention secret or they could have provided that the names placed upon nominating petitions would be secret, but the answer is that they did not see fit to do so although carefully affirming such right of secrecy in primary election balloting. It is true that Section 23 provides that no person "signing such certificate shall vote at any primary election to be held to nominate candidates for office to be voted for at the election to be held next after the date of signing such certificate." The majority emphasizes the importance of that language, but it is to be noted that the section does not say that the signers shall not "vote again", indicating that by the signing of such certificate they have "voted" once. I am *421 not in agreement with counsel for the petitioners in this case that those voters who signed petitions creating, temporarily, at least, the American Independent Party and nominating its candidates for president and vice president, are merely registration records. I agree with the majority that they are more than that, but I do not believe that a determination of that question equates the status of a signer of a petition to that of a "voter" in a primary election. It is in my opinion almost ridiculous to talk about the signing of such a petition as being equivalent to a secret ballot. In casting such a vote in a primary election not even the election officials know how the voter votes. Any person soliciting signatures for the purpose of nominating a candidate by that method of necessity knows exactly whose names are contained thereon. Every signer on every petition after the first one has an opportunity to look at other names on the petition, the secretary of state and all of his staff of necessity may examine the signatures, as well as every clerk of every county court of this state and all of his staff have the right to examine the signatures that are alleged to be those of residents of the particular county. Just how the legislature, if it ever decided to adopt the amendment proposed by the majority opinion, would make provision so that these names would be "secret" is beyond my comprehension.
It is my opinion further that when these certificates are filed in the office of the Secretary of State as Code, 3-5-24, as amended, mandatorily requires, they become public records. "* * * [A] public record is one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done. In all instances where by law or regulation a document is filed in a public office and required to be kept there, it is of a public nature, * * *." 45 Am. Jur., Records and Recording Laws, § 2. While not directly in point, I believe the reasoning of this Court in the recent case of State ex rel. Charleston Mail Association v. Kelly, 149 W.Va. 766, 143 S.E.2d 136, is very persuasive in this regard. See also, Warth v. Jackson County Court, 71 W.Va. 184, 76 S.E. 420.
For the reasons stated herein I would have granted the writ of mandamus as prayed for. I am authorized to state that Judge CALHOUN concurs in the views expressed in this dissenting opinion.