STATE *ex rel.* CHARLES I. KARNES

*v.*

IRA L. DADISMAN, JR., *etc., et al.*

(No. 12884)

Submitted January 15, 1970.      Decided March 3, 1970.

*Burton & Burton, Walter W. Burton,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Joseph E. Hodgson,* Assistant Attorney General, for respondents.

CAPLAN, JUDGE:

This is an original proceeding in mandamus wherein the petitioner, Charles I. Karnes, seeks a writ to compel the respondents, Ira L. Dadisman, Jr., Director of Personnel of the Civil Service System of West Virginia, and Donald E. Ryder, Robert L. Elkins and Luther R. Jones, members of the Civil Service Commission of West Virginia, to grant him, the petitioner, a hearing in accordance with the rules of the aforementioned civil service system on his discharge of August 14, 1969. Upon the petition and its exhibits this Court awarded a rule, returnable January 14, 1970. On that date the matter was submitted for decision upon the petition and its exhibits, upon the demurrer, answer and plea in abatement of the respondents, upon the petitioner's demurrer to the answer and replication to the plea in abatement and upon the oral arguments and briefs of counsel for the respective parties.

The allegations in the petition for the writ, in substance, are that the petitioner on and for many years prior to August 14, 1969 was employed by the Alcohol Beverage Control Commissioner as merchandising director; that on or about December 23, 1968, Harrison Everett, then the Alcohol Beverage Control Commissioner, by letter, requested the West Virginia Civil Service System to include the employees of the Alcohol Beverage Control Commissioner under said civil service system; that, as indicated by the minutes of its meeting, the Civil Service Commission placed such employees under the civil service system; that on January 11, 1969, the then Governor, the Honorable Hulett C. Smith, issued Executive Order No. 5-69, effectuating the agreement between the Alcohol Beverage Control Commissioner and the West Virginia Civil Service System to place such employees under the protection of said system; that the petitioner continued as a civil service protected employee until May 29, 1969, when the then and present Alcohol Beverage Control Commissioner attempted to discharge him from his position without complying with the rules and regulations of the civil service system; that upon receiving no reply from his written appeal from the attempted discharge, the petitioner's attorney, by letter dated July 1, 1969, demanded an answer; that on July 7, 1969, the respondents held an ex parte hearing regarding said dismissal, and, as indicated by a letter of record, admitted that Mr. Karnes was an employee covered by the civil service system; that by Executive Order No. 3M-69, dated July 14, 1969, the Honorable Arch A. Moore, Jr., Governor of the State of West Virginia, attempted to remove the aforesaid employees from the protection of the civil service system; that on August 14, 1969, the Alcohol Beverage Control Commissioner instructed the payroll clerk to remove the petitioner from the payroll without complying with the aforesaid rules and regulations; that the petitioner's demand for a hearing was refused on the ground that said Executive Order No. 3M-69 effectively

removed him from coverage under the civil service system; and that the refusal of the respondents to grant him a hearing was arbitrary and unwarranted.

The respondents, through their pleadings, do not deny the basic facts alleged in the petition. They acknowledge that Mr. Karnes was an employee of the Alcohol Beverage Control Commissioner and that he was discharged from such employment without a hearing. However, they firmly dispute the interpretation placed by the petitioner on the various letters and instruments involved in this proceeding. The basic position of the respondents is that the petitioner, by reason of a defective executive order, was never covered by civil service and was therefore not entitled to a hearing on his discharge.

The validity of former Governor Smith's Executive Order No. 5-69 is in issue in this proceeding. If it is in compliance with the provisions of Code, 1931, 29-6-2, as amended, it is valid and the writ will be awarded; if, on the other hand, such executive order does not comply with the requirements of said code section it is invalid and the writ will be denied.

Specifically, the respondents contend that Executive Order No. 5-69 is deficient for the following reasons: (1) the order was not issued with the written consent of the civil service commission and the appointing authority; (2) the order purported to include all employees in the subject department except those therein specifically excepted, whereas it should have listed certain positions to be included in the classified service; (3) the order attempts to place under civil service coverage positions that are specifically excluded by statute; (4) the order did not place such employees under the civil service system but merely directed the appointing authority and the civil service commission to take the necessary action to place all positions, with certain exceptions, under civil service coverage; and, (5) that the order is vague and impossible of implementation.

In determining the validity or invalidity of Governor Smith's order, it is essential to consider the statute which gives a governor the authority to add to the civil service rolls. This statute, Code, 1931, 29-6-2, as amended, provides, where pertinent:

> "The governor may, by executive order, with the written consent of the civil service commission and the appointing authority concerned, add to the list of positions in the classified service, but such additions shall not include the following:" (Fourteen categories of employees are listed, only six of which could be applicable to the instant case).

Governor Smith's executive order recites that "the Commissioner of the West Virginia Alcohol Beverage Control Commission, has recommended Civil Service coverage for all employees of the Commission; * * *." The initiative taken by the Alcohol Beverage Control Commissioner is reflected by the letter he forwarded to Mr. Dadisman, Director of the West Virginia Civil Service System and a respondent herein.

The respondents complain that the Alcohol Beverage Control Commissioner's letter does not constitute consent as required by the above statute. This being a major contention in this proceeding, Mr. Everett's letter is quoted in full and reads as follows:

> "After considerable research, review, and consultation, it has been determined that the placing of the state department technically identified as West Virginia Alcohol Beverage Control Commissioner under the West Virginia Civil Service System would be materially advantageous to the State of West Virginia in promoting a higher degree of stabilization and efficiency of its personnel.
>
> "This letter, therefore, expresses my desire and recommendation on the subject and I will await your reply for further guidance."

This letter, in our opinion, clearly constitutes the written consent of the appointing authority to add the

employees of his department to the classified service, as contemplated by the above quoted statute. To hold otherwise would lend undue significance to the word "consent," would elevate its meaning beyond the clear intent of the legislature and would ignore the plain purpose of the statute. The statute is clearly designed to prevent a governor from placing employees of a department under the civil service system without the consent or approval of the appointing authority. Such appointing authority is cognizant of the workings and needs of the department and is fully apprised of the various duties of his employees. He, therefore, is in the best position to know whether such civil service coverage is feasible for his department and whether it will enhance the administration thereof.

In the instant case, when the Commissioner, in writing, initiated the procedure to effect civil service coverage for employees of his department and where he therein clearly expressed his favorable recommendation for such coverage, he gave the written consent contemplated by the statute. Consent, as used in the above statute, means no more than approval and when one favorably recommends that a thing be done in a certain manner he unquestionably notes his approval thereof. No other connotation can be attributed to his words. We, therefore, find entirely without merit the respondents' contention that Commissioner Everett's letter did not constitute the consent required by the subject statute.

The matter of failure to give written consent is again raised by the respondents. They aver in their answer that "at no time did the Civil Service Commission itself execute with the Alcohol Beverage Control Commissioner and submit to the Governor a written consent for the Governor's adding to the list of positions in the classified service." It must be determined whether the action of Governor Smith was taken "with the written consent of the civil service commission."

A recital in Governor Smith's Executive Order No.

5-69 says: "WHEREAS, the West Virginia Civil Service Commission, acting through its proper agents, has consented to this action, * * *." The consent alluded to therein is contained in the minutes of an official meeting of the civil service commission. An excerpt from said minutes is attached to the petition as "Exhibit B" and reads as follows:

> "1. In compliance with letter dated December 23, 1968, from Mr. Harrison Everett, Commissioner, West Virginia Alcohol Beverage Control Commission, the Civil Service Commission approved coverage for employees of this Commission contingent upon an Executive Order from Governor Hulett C. Smith."

This language is clear and unmistakable. The Civil Service Commission, without ambiguity, approved coverage under civil service for employees of the Alcohol Beverage Control Commissioner. Such approval was contingent only upon an executive order from the Governor, which order was executed and issued soon thereafter.

The statute, Code, 1931, 29-6-2, as amended, does not provide that the civil service commission execute and submit to the governor its written consent. The approval by that commission, in writing, is clearly evidenced in the record by the above quoted minutes. Such approval, as hereinbefore discussed, is tantamont to consent. Can there be any doubt that the record of this proceeding unequivocally reflects, in writing, the consent of the commission to cover the subject employees in the classified service? We think not. Again, as was said in relation to the consent of the Alcohol Beverage Control Commissioner, there was compliance with the provisions of Code, 1931, 29-6-2, as amended. The consent of the civil service commission was in writing and the governor acted with such consent.

In a further allegation in support of their contention that Governor Smith's executive order was invalid, the respondents assert that the order purported to include

all employees except those therein specifically excluded, whereas it should have listed certain positions. In conjunction therewith they charge that the order attempts to place under civil service coverage positions that are specifically excluded by the statute. For these reasons respondents say that the executive order of Governor Smith is vague and impossible of implementation. Governor Smith's executive order was clearly designed to place all positions of the West Virginia Alcohol Beverage Control Commissioner under protection of civil service but excepted six of the categories which the statute says shall not be included. We are of the opinion that the order intended to and would cover all positions that could legally be included. Those excluded under the statute are obviously not to be included in the classified service. We fail to see why this would present any particular difficulty to the Alcohol Beverage Control Commissioner and the civil service commission in designating those in the department who should be included in the classified service. Furthermore, we perceive no reason to require the listing of specific positions in this department. The designation of positions can change from time to time and it would be an easy matter to remove one from civil service coverage if the commissioner could do so by merely changing the designation of the position. Therefore it appears that the better way to add to the list of positions in the classified service is to designate for coverage all employees except those who are excluded by statute. The fact that Governor Smith's order did not exclude all those positions excluded by statute should not defeat those legally included in the classified service.

The respondents finally aver in their answer that Governor Smith's executive order "was not an effective valid order in that it was merely directive to perform an act in the future and does not add to the list of positions in the classified service as contemplated by the statute, and further direction contained in said order is an unlawful delegation of executive power, which power was

delegated by the Legislature only to the Governor." Reference is made to that part of Governor Smith's executive order which reads: "The Commissioner of the West Virginia Alcohol Beverage Control Commission and the Civil Service Commission shall take the necessary actions to place all positions of the West Virginia Alcohol Beverage Control Commission under Civil Service coverage * * *."

The former Governor's order is unequivocal in that it unmistakeably directs the parties involved to take the necessary action to effect civil service coverage for the subject department. His direction is not contingent upon the acts of anyone else but says that they "shall" place said employees in the classified service. Governor Smith did not delegate his executive power to the appointing authority or to the civil service commission but merely directed them to carry out his order. To place any other connotation on those words would require us to engage in an exercise in semantics which would deprive them of their clear meaning and intent.

Considering further the principal issue involved in this proceeding, the validity or invalidity of Governor Smith's executive order, we must keep in mind the universally accepted legal maxim that unless proved otherwise there is a presumption of the validity of acts done by a public officer. The following succinct expression of this principle is contained in *State ex rel. Staley* v. *The County Court of Wayne County*, 137 W. Va. 431, 73 S. E.2d 827: "It is well settled that in the absence of evidence to the contrary public officers will be presumed to have properly performed their duties and not to have acted illegally, but regularly and in a lawful manner." See *State ex rel. Powers* v. *Boles*, 149 W. Va. 6, 138 S. E.2d 159; *Cunningham* v. *The County Court of Wood County*, 148 W. Va. 303, 134 S. E.2d 725; *Crawford* v. *Taylor, Judge*, 138 W. Va. 207, 75 S. E.2d 370; *State ex rel. Bumgardner* v. *Mills*, 132 W. Va. 580, 53 S. E.2d 416; and 42 Am. Jur., Public Administrative Law, Section 240.

The record here reveals that Governor Smith regularly and in a lawful manner exercised the authority placed in him by the legislature. By executing the subject executive order he, "with the written consent of the civil service commission and the appointing authority concerned" effected coverage in the classified service for certain employees of the Alcohol Beverage Control Commissioner. There is no evidence or even an allegation of any unlawful or illegal act. It is contended only that he did not comply with the requirements of Code, 1931, 29-6-2, as amended. As herein noted, we cannot agree with such contention. Certainly, Governor Smith did substantially all that he was required to do under the statute to effect the desired civil service coverage. Substance, not mere form, must prevail as the controlling consideration. We are of the opinion, therefore, that Executive Order No. 5-69 is valid.

It having been held that Governor Smith's Executive Order No. 5-69 is valid, it necessarily follows that this petitioner, not being one excluded therein or by statute, has been since the date of said order an employee covered by civil service under Code, 1931, 29-6, as amended. Being such covered employee, he is entitled to the protection thereby afforded. An examination of our statutes pertaining to the civil service system reveals that the legislature has provided for the manner in which positions in a department may be added to the classified service, but no authority is given anyone to remove employees therefrom, except for cause and after a proper hearing when requested.

Governor Moore's Executive Order 3M-69 purports to revoke the order issued by Governor Smith on the grounds that it was illegal and void. This action, asserts the respondents, "removed any authority or jurisdiction respondents may have ever possessed over employees of the Alcohol Beverage Control Commissioner." They appear to take the position that since Governor Smith's action was voided by Governor Moore's order, the subject

employees were never included within the civil service system.

Inasmuch as the legislature has never authorized the governor to remove covered employees from the classified service, it must be assumed that Governor Moore's action was predicated on his opinion that the former executive order was illegal and void by reason of its failure to comply with the provisions of Code, 1931, 29-6-2, as amended. In making this finding he was not merely executing the law but rather was interpreting the law, a function clearly within the exclusive province of the judicial branch of the government. To permit this action by the executive would condone the usurpation by it of a judicial function.

As noted in 16 Am. Jur. 2d, Constitutional Law, Section 217, "Executive officers cannot usurp judicial functions, such as passing upon the constitutionality of legislation, nor can they prevent the courts from exercising such functions." As to the power of the executive generally, it was said in 16 Am. Jur. 2d Constitutional Law, Section 216:

> "The executive power is the power to execute the laws, that is, to carry them into effect, as distinguished from the power to make the laws and the power to judge them. It has been said that the executive power is more limited than legislative powers, extending merely to the details of carrying into effect laws enacted by the legislature as they may be interpreted by the courts, the legislature having the power, except where limited by the constitution itself, to stipulate what actions executive officers shall or shall not perform."

See State v. Huber, 129 W. Va. 198, 40 S. E.2d 11.

Civil service laws are designed to afford to covered employees security of tenure. To permit the executive authority of the state, or an appointing authority, to remove employees from such coverage without following the statutory procedures, or to allow such authorities,

without judicial determination, to interpret the laws and by such interpretation to hold void the procedures employed to bring such employees within the classified service would defeat the basic purpose of civil service. See *Guine v. Civil Service Commission of West Virginia,* 149 W. Va. 461, 141 S. E.2d 364. Meaningful and effective civil service coverage requires a liberal construction of the laws creating it.

> "Constitutional and statutory civil service provisions should be liberally construed in their entirety to further their purpose to put positions in the classified service beyond political control or the exercise of partisanship and personal favoritism. The rule of liberal construction will not, however, warrant the thwarting of express legislative direction by a resort to judicial construction of its terms. The civil service law as a whole, and the rules of the civil service commission made under its authority, ought, if possible, to be so construed as to make an effectual piece of legislation in harmony with common sense and sound reason." 15 Am. Jur. 2d, Civil Service, Section 5.

In view of the foregoing, we find no merit in the respondents' contention that Governor Moore's action is not subject to judicial control or review. That a governor may exercise his discretion and may act through his executive order is not disputed. Nor is it disputed that his acts, pursuant to his official duties, ordinarily are not subject to judicial review. For example, if, in the exercise of his discretion, the governor by a proper executive order adds to the list of positions in the classified service, his action is final and cannot be changed by the courts. However, where his action is not merely discretionary, but constitutes an invasion of the function of the courts, as is the case here, such action is subject to judicial review.

As noted from our discussion herein, Governor Smith, the appointing authority, and the civil service commission have complied with the provisions of Code 1931, 29-6-2, as amended. Certainly there can be no doubt in the

record of this proceeding what those officials intended to do and did.

This petitioner, consequently, was included within the classified service entitling him to all of the protection afforded by the law and the civil service rules and regulations. He has a clear legal right to a hearing before the commission on his discharge and there is a clear legal duty on the commission to afford such hearing. Therefore, the writ prayed for is awarded.

*Writ awarded.*