FERRELL ROE

*v.*

M & R PIPELINERS, INC.

*and*

KEYSTONE ACCEPTANCE CORP.

*v.*

M & R PIPELINERS, INC., *et al.*

(No. 13275)

Submitted September 11, 1973. Decided November 20, 1973.

Dissenting Opinion December 3, 1973.

Rehearing Denied March 15, 1974.

*Jones, Williams, West & Jones, James C. West, Jr.,* for appellant.

*Stone, Bowles, Kauffelt & McDavid, T. D. Kauffelt* for appellee Keystone Acceptance Corp.

NEELY, JUSTICE:

These consolidated civil actions concern the validity of a notice of *lis pendens* when its prerequisite, an order of attachment, allegedly has not been duly entered and recorded.

On January 15, 1966, Ferrell Roe sued M & R Pipeliners, Inc. for back wages in the Circuit Court of Harrison County. In June 1966 there was a mistrial, and thereafter, in October 1966, a second trial was conducted in which Ferrell Roe obtained a verdict and judgment for $11,121.25. While Ferrell Roe's case was pending in the Circuit Court of Harrison County, Keystone Acceptance Corporation sued M & R Pipeliners, Inc. in the Circuit Court of Kanawha County, and in August 1966 Keystone was awarded judgment against M & R Pipeliners for $275,002.50. In September 1966, Keystone sued both M & R Pipeliners and Ferrell Roe in the Circuit Court of Harrison County to establish creditors' priority because

Keystone was frustrated by appellant Roe's notice of *lis pendens* and attachment of M & R's real estate in its attempts to levy on M & R's property in Harrison County to satisfy its Kanawha County judgment. Keystone alleged that the notice of *lis pendens* filed in the *Roe v. M & R Pipeliners* case was invalid because the notice was based upon a supposed order of attachment which was never issued by the Clerk of the Circuit Court of Harrison County. Upon depositions, stipulations and memoranda of authorities, and after Ferrell Roe obtained his October 1966 judgment in Harrison County, the Circuit Court of Harrison County took the case under advisement and, at late last, in September 1971 ruled in favor of Keystone and set aside the notice of *lis pendens* on the grounds that no proper order of attachment had ever been issued. From this final order Ferrell Roe, petitioner in this Court, appealed.

The undisputed facts concerning the order of attachment in question are that on January 15, 1966, Roe's complaint, affidavit for attachment, and instructions to the clerk for instituting the civil action against M & R were properly filed. The Clerk of the Circuit Court of Harrison County was paid $11.50 by check drawn on the checking account of the law firm of Clifford, Jones & Williams and signed by James C. West, Jr., and it was noted on the check that the purpose of payment was for "Clerk's fee and Order of Attachment, Roe, et al vs. M & R Pipeliners, Inc." The fee book maintained by the Clerk of the Circuit Court of Harrison County shows the following entry on January 15, 1966: "Jan. 15 Order of Attachment." The Sheriff of Harrison County was paid the sum of one dollar ($1.00) by a check drawn on the checking account of Clifford, Jones & Williams and signed by James C. West, Jr. which shows on its face that it was for "Service of Order of Attachment, Roe, et al vs. M & R Pipeliners, Inc." The execution record maintained by the Sheriff of Harrison County shows the following entry with reference to the *Roe v. M & R* case: "1/15/66 Order of attachment Received 1/15/66 10:00 a.m. Executed the

attached order of attachment at 2:00 p.m.—1/15/66 in Harrison Co. (signed) James O. Cain." The Civil Action Docket for the *Roe v. M & R* case maintained by the clerk of the Circuit Court of Harrison County shows the following entries for January 1966:

"Jan. 15  Complaint filed and summons issued. Affidavit for attachment filed.

Jan. 18  Order of Attachment returned showing said Order of attachment being executed at 2:00 p.m. on the 15th day of January, 1966, by James O. Cain, Deputy for S.H.C."

Deputy Sheriff James Cain testified that he served papers in the *Roe v. M & R* case by posting the papers on land which he thought belonged to M & R, but which was later discovered to be the property of an adjoining landowner. He was unable to remember what the papers contained, and accordingly his testimony tended neither to prove nor disprove the existence of an order of attachment.

It is undisputed that there was no order of attachment in the Circuit Clerk's file of the *Roe v. M & R* case. Furthermore the testimony of the adjoining landowner, George L. Reno, reveals that he received attachment papers when they were inadvertently posted on his property, and that those papers to the best of his knowledge, contained only a copy of the sheriff's return of the order of attachment and did not contain an order of attachment. Therefore the only evidence tending to disprove the existence of an order of attachment consists of the absence of the order from the file in the *Roe v. M & R* case and the testimony of Mr. Reno.

On the other hand the evidence tending to prove the existence of a properly issued order of attachment consists of a clear demonstration that Mr. Roe, through counsel, performed every prerequisite for the clerk's issuance of the order of attachment. Under the provisions of Chapter 38, Article 7, Sections 1 through 12, *Code of West*

*Virginia,* 1931, the order of attachment is a piece of "boiler plate" which *Code,* 38-7-4 mandates that the clerk shall issue in substantially the form dictated by *Code,* 38-7-12, upon presentation of the proper affidavit. The appellee, Keystone, has sought to impose a forfeiture upon the appellant, not for the appellant's own dereliction or negligence, but for the alleged failure to act of the circuit court clerk. The appellant, therefore, relies upon the presumption that public officers regularly and legally discharge their official duties and maintains that the Circuit Court of Harrison County erred in holding that the evidence presented by Keystone was sufficient to rebut this presumption. Appellant's theory of the case is that once appellant has demonstrated proper performance on his part of every act necessary to authorize the circuit court clerk to issue the order, the presumption of regularity compels the Court to make the logical inference that an order was properly issued. The appellant has met his obligation of introducing sufficient evidence of proper actions taken at the same time that an order of attachment would have issued to bring the presumption of regularity into operation as a rule of evidence.

We have held in other cases that the mere absence of an official document from a place where it should be filed is not conclusive evidence that the document was never properly executed. In the case of *Van Winkle v. Blackford,* 54 W.Va. 621, 46 S.E. 589 (1904) this Court said in syllabus pt. 6:

> "When it is shown by public records that an official bond has been given by a public officer, but search for it is unavailing, the presumption in favor of the regularity of the acts of public officers applies, and the court may assume that the condition of the bond was such as the law required."

Although this case has a factual situation which defies summary in its entirety, those facts which apply to the case at hand concern Mr. Van Winkle, who was designated by the Board of Trustees of a sinking fund as their

treasurer. It was alleged that he, with his sureties, entered into a bond conditioned as required by a particular ordinance, and that afterwards, owing to a defect in the form of that bond, a new bond was given. The custodian of the records of the City of Parkersburg testified that diligent search among the records had failed to reveal the bond. However, the minutes of the Board of Trustees of the sinking fund showed that bond had been given in October 1895. From these facts, which are similar to those in the case at bar, this Court ruled that the only reasonable inference was that the bond had been given and later lost because of the rule that all things are presumed to be correctly done until the contrary is proven. In *Van Winkle* we cited with approval the case of *Leland v. Cameron,* 31 N.Y. (4 Tiff.) 115 where an execution had been issued and lost, and the only evidence of it was an entry by the attorney in his register, as both the attorney and the sheriff were dead. We quoted the following language from the head notes of *Leland*:

> "The contents of the execution in such case may be inferred from the facts, that the law prescribes its form; the attorney issuing it was conversant with such instruments, and the sheriff to whom it was directed knew what it must contain to authorize him to sell the property. In view of such facts, and after a lapse of thirty years, the court may assume that the execution was in due form, containing all such directions as the statute required it should contain."

In the case at bar we have facts similar to the *Leland* case, *supra,* in that there is no order of attachment in the file of the case, yet the Civil Action Docket for civil action No. 2612 maintained by the Circuit Clerk shows, among other things, the entry for January 18, 1966: "Order of Attachment returned showing said Order of attachment being executed at 2:00 p.m. on the 15th day of January, 1966, by James O. Cain, Deputy for S.H.C." In addition, the Sheriff's Execution Record maintained by the Sheriff of Harrison County shows an entry for January 15, 1966 and the words "Order of

attachment received 1/15/66 10:00 a.m.—1/15/66 in Harrison Co. (signed) James O. Cain."

Presumptions of differing types and differing strengths abound in the law. The strength to be accorded to any given presumption, and therefore the degree of evidence needed to rebut that presumption, depends upon considerations of public policy. For example, in this State the presumption in favor of the legitimacy of a child is so strong that a married woman is not permitted to deny the access of her husband, although the fact of non-access may be shown by other evidence. *State ex rel. Worley v. Lavender,* 147 W.Va. 803, 131 S.E.2d 752 (1963). Accordingly, the presumption with regard to legitimacy does not rise to the level of an absolute presumption of law, but rather a presumption of fact, which may be rebutted, but only by evidence of the most credible, clear, and convincing type. Lord Mansfield, in the case of *Goodright v. Moss,* 2 Cowp. 591, 98 Eng.Rep. 1257, justified the strict evidentiary requirements necessary to rebut the presumption of legitimacy on the grounds that the presumption is ". . . a rule, founded in decency, morality and policy, that they [husband and wife] shall not be permitted to say after marriage, that they have had no connection, and therefore that the offspring is spurious; more especially the mother, who is the offending party." Therefore, even Lord Mansfield permitted issues of social policy to invade the province of rules of evidence which the text writers would reserve for pure logic.

Few areas of the law are as confusing or as hotly debated as the law of presumptions. As one text writer put it, "Every writer of sufficient intelligence to appreciate the difficulties of the subject matter has approached the topic of presumptions with the sense of hopelessness and has left it with a feeling of despair." Morgan, "Presumptions" 12 *Wash.L.Rev.* 225 (1937). The central issue in debate among learned jurists and text writers is whether a presumption itself should be accorded the weight of evidence, or whether once any evidence has

been introduced to rebut a given presumption, the presumption disappears and evidence rebutting the presumption must be met by contrary evidence. Dean Prosser summarizes the majority view of the law with the statement: "The writers, if not all of the courts, seem to have agreed that in any case a presumption, as a rule of law applied in the absence of evidence, is not itself evidence, and can no more be balanced against evidence than two and a half pounds of sugar can be weighed against half past two in the afternoon." Posser, *Law of Torts,* Section 39. Even if we agree that evidentiary presumptions must disappear in the face of sufficient evidence to the contrary, the question remains concerning the kind and amount of evidence which will be "sufficient" to precipitate the disappearance of the presumption. Lord Coke, in his classic work, *First Institute of the Laws of England,* Vol. III, Ch. IX "Of Trial by Jury," p. 534, 1826 Edition, appears to deal as adequately with the law of presumptions as has been done in the more modern literature when he said:

> "And many times juries, together with other matter, are much induced by presumptions; whereof there be three sorts, viz. violent, probable, and light or temporary. *Violenta Praesumptio* is many times *plena probatio;* as if one be run through the body with a sword in a house, whereof he instantly dieth, and a man is seen to come out of that house with a bloody sword, and no other man was at that time in the house. *Praesumptio probabilis* moveth little, but *praesumptio laevis seu temeraria* moveth not at all. So it is in the case of a charter of feoffment, if all the witnesses to the deed be dead (as no man can keep his witnesses alive, and time weareth out all men) then violent presumption, which stands for a proof, is continual and quiet possession; for *ex diuturnitate temporis omni praesumuntur solemniter esse acta.*"

In West Virginia our law has created presumptions which Lord Coke would call "violent" which are founded on the sound public policy of discouraging frivolous

litigation over technicalities. Accordingly, our law has attempted to instill public confidence that citizens will not be deprived of their property by virtue of the nonfeasance of public officers through establishing a "violent" presumption that public officers discharge their duties in a regular and legal manner. This Court has frequently affirmed *omnia praesumuntur rite et solemniter esse acta. Vorholt v. Vorholt,* 111 W.Va. 196, 160 S.E. 916 (1931). A fair reading of the cases indicates that the strength accorded to this presumption in any given instance is dependent upon the type of rights which are being asserted by the party against whom the presumption is invoked. *See, State Road Comm. v. Young,* 100 W.Va. 394, 130 S.E. 478 (1925); *State ex rel. Bumgardner v. Mills,* 132 W.Va. 580, 53 S.E.2d 416 (1949); *Price v. Sims,* 134 W.Va. 173, 58 S.E.2d 657 (1950); *State ex rel. Staley v. Wayne County Court,* 137 W.Va. 431, 73 S.E.2d 827 (1952); *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953); *State ex rel. Smith v. Boles,* 150 W.Va. 1, 146 S.E.2d 585 (1965); *State ex rel. Daily Gazette Co. v. Bailey,* 152 W.Va. 521, 164 S.E.2d 414 (1968); *State ex rel. Karnes v. Dadisman,* 153 W.Va. 771, 172 S.E.2d 561 (1970). In this State, although we have not articulated the rule in these terms before, we have developed a test which balances on a case by case basis, society's interest in resolving controversy and discouraging litigation over technicalities against an individual's right to procedural regularity. Among the cases it will be discovered that the presumption of proper performance of official duties is less strong in cases involving notice of a judicial proceeding, where failure to give notice may result in total forfeiture of the rights of one party, than it is in cases where substantive rights are not placed in potential jeopardy. In each case where a presumption of regularity is invoked, it is necessary for the trial court to determine, as a matter of law, the amount of evidence which will be sufficient to rebut the presumption. Wigmore, *Evidence,* Sec. 2491. Under West Virginia case law this Court will indulge the presumption of regularity of official duties in

the strongest possible form where the party seeking to challenge the presumption can demonstrate no injury to himself save the loss of the advantage which would have accrued to him by virtue of the court invalidating a particular official proceeding. The presumption is far weaker, and accordingly far less evidence is required, as a matter of law, to rebut the presumption, when the party challenging a formal requirement can demonstrate direct injury to himself. Thus in the case of *Nelson Transfer & Storage Company v. C. E. Jarrett, et al.*, 110 W.Va. 97, 157 S.E. 46 (1931) this Court said in syllabus pt. 2: ·

> "In considering an officer's return of service of a summons, distinction must be drawn between cases of judgment upon no notice, actual, presumptive or constructive, and cases where there has been actual notice but a technicality is relied upon to defeat it, or where the defendant appeared, and denied service, but had opportunity to defend. In the former instances the return may be impeached; in the latter it may not."

In the case at bar the appellees have in no way been directly prejudiced by the alleged absence of an order of attachment. A proper notice of *lis pendens* was filed in the office of the County Clerk of Harrison County which gave the appellees notice of the attachment; they did not predicate the organization or prosecution of their litigation against M & R Pipeliners upon the absence of an order of attachment; and, they had no greater interest in seeing a properly executed and filed order of attachment in the case of *Ferrell Roe v. M & R Pipeliners, Inc.* than any other citizen who has a general interest in assuring that all provisions of the *West Virginia Code* are faithfully obeyed.

In this case appellee's only interest in the alleged order of attachment is to demonstrate its absence and thereby cause appellant Roe to suffer a forfeiture, entirely by virtue of the alleged nonfeasance of a public officer over whom the appellant had no control. Therefore public

policy demands that the presumption in favor of the proper performance of administrative duties by public officers be applicable to this case in its strongest form. The mere absence of an order of attachment from the file plus the testimony of Mr. Reno that the papers delivered to him did not contain an order of attachment are not sufficient to precipitate the disappearance of the presumption. In order to entitle the trier of fact to weigh the evidence, it is first necessary for sufficient evidence, as a matter of law, to be introduced to rebut the presumption. As long as the presumption of regularity stands, it compels the court to infer the existence of a proper order of attachment from the attending circumstances of faithful compliance by the appellant with all the formal prerequisites necessary to entitle him to the issuance of an order of attachment from the circuit clerk. In this case we hold that the evidence required to rebut the presumption must be clear and convincing, and therefore the circuit court erred in not finding for the appellant as a matter of law.

Accordingly the judgment of the Circuit Court of Harrison County is reversed and the case is remanded with instructions to enter judgment for the appellant.

*Reversed and remanded.*

BERRY, CHIEF JUSTICE, dissenting:

I agree with many of the points discussed in the majority decision concerning the general application of presumptions. However, it is not necessary nor proper to consider the application of those rules in this case, because a presumption never arose from the facts established by the evidence. I, therefore, respectfully dissent from the majority opinion because the evidence in this case is to the effect that no order of attachment was ever issued.

The clerk's docket discloses that the complaint instituting the action and the affidavit for an attachment

were filed and summons was issued on January 15, 1966, but there is no entry of an attachment being issued. The officer's return was entered in the clerk's docket on January 18, 1966. The return should have been attached to the order of attachment and the officer who made the return stated that all he saw was the return and did not know whether any other paper was attached to it. He called the return an order of attachment, which, of course, it was not. The officer attached the return to the door of a building and the owner of the building testified that the return was the only paper he found on the building and there were no other papers attached to it.

The records in the clerk's office do not support the issuance of an order of attachment by the clerk. In fact, the failure of the clerk's docket to show an entry that an attachment was issued supports the defendants' contention that no order of attachment was ever issued by the clerk.

There is no proof that an order of attachment was ever issued in this case and, therefore, there is nothing to support the presumption that an order of attachment was issued. A presumption cannot be used as a substitute for proof of an independent and material fact. 29 AM. JUR. 2d, *Evidence,* § 171.

The presumption that public officers have done their duty is a legal presumption but does not supply proof of a substantive fact. *United States v. Ross,* 92 U.S. 281, 23 L. Ed. 707.

There was no evidence introduced to support or explain the presumption attempted to be used by the plaintiff in this case, but on the contrary, any such presumption was rebutted by the evidence introduced in the case at bar and by virtue of such evidence the contended presumption disappeared and was no longer to be considered in the disposition of the case. *Shaw v. Perfetti,* 147 W.Va. 87, 125 S.E.2d 778.

No one testified that an order of attachment was ever issued and no one testified that they ever saw an order of attachment. No order of attachment was contained in the court file. It may well be said that the absence of the order of attachment from the court file creates a presumption that none was ever there and certainly there was no rebuttal of this alleged presumption because the evidence strongly supports it with independent material facts. *Trent v. State Compensation Commissioner,* 113 W.Va. 262, 167 S.E. 623; *Tree v. White,* (Utah), 171 P.2d 398.

For the reasons stated in this dissent, I would affirm the judgment of the Circuit Court of Harrison County.

I am authorized to say that Justice Sprouse joins in this dissent.